[No. 26795. Department One.   December 1, 1937.]

A. L. ESTEP et al., Respondents, v. SECURITY SAVINGS & LOAN SOCIETY et al., Appellants.[1]

L. B. Donley, for appellants.

T. H. McKay and L. B. Sulgrove, for respondents.

SIMPSON, J.—This action was instituted by plaintiffs to recover damages for personal injuries suffered

[1]Reported in 73 P. (2d) 740.

by plaintiff Alice Estep, which were occasioned by a fall from a wooden walk upon property rented to plaintiffs by the defendant Security Savings & Loan Society, a corporation.

Plaintiffs alleged that they rented the property in question from defendant Security Savings & Loan Society through its agent R. G. Lasell, who promised and agreed to make certain repairs to a wooden walk that extended from the street to the kitchen and from there to outbuildings in the rear; that the walk was in a defective condition, but not obviously so defective as to preclude the use thereof.

On September 25, 1934, this walk gave way, while plaintiff Alice Estep was walking along the walk back of the house, throwing her forwards and downwards, causing her head to come in contact with a wooden block supporting part of the walk. Such injury resulted in a flat detachment of the retina of her left eye, causing chronic-retinitis, which caused her much pain and the loss of vision of the left eye.

It was further alleged that, on May 20, 1935, the other corporation defendants, First Federal Savings & Loan Association of Aberdeen and the Monarch Corporation, were incorporated and succeeded to all of the assets and assumed the liabilities of the Security Savings & Loan Society.

Defendants answered, admitting the contract of the lease, the formation of the First Federal Savings & Loan Association of Aberdeen and the Monarch Corporation, and the allegation that they succeeded to the assets of the Security Savings & Loan Society. Defendants then denied promises to repair and the allegations of injury to plaintiff, alleging further that the defects in the walk were known to the plaintiffs, and that they assumed the risk attendant upon its use.

The action was tried to the court, sitting without a

jury. At the close of the trial, the court found that the contract was entered into as alleged by plaintiffs; that plaintiff Alice Estep was injured by a fall from the walk, the fall being caused by a latent defect consisting of a rotted block which rested on the ground and supported the upper part of the walk. Judgment was then entered against the three defendant corporations for the sum of $1,250 less the amount of $130 for unpaid rent. The court dismissed the action against defendant R. G. Lasell. From this judgment, defendants have appealed, contending that the trial court erred, first, in finding that the defendants were liable for the injury; and second, that the amount of damages awarded to plaintiff was excessive.

The evidence essential to a decision in this case is summarized as follows: Respondent A. L. Estep testified there was a dwelling house, garage, and chicken house upon the property; and that, at the time the premises were rented, appellant Security Savings & Loan Society promised to make certain repairs to the house, also repairs to the board walk, which was in a state of disrepair plainly to be seen in so far as the top part of the walk was concerned. Respondents moved onto the property with the understanding that such repairs would be made.

Some repairs were made to the house and the front porch. Repairs to the board walk were not made, though the matter of repair was called to the attention of appellants' agent on several different occasions, respondent Alice Estep claiming the last time it was called to appellants' attention was in August before the accident. At such times, appellants' agent promised to either repair the old or build a new walk. The walk in question was one hundred ten feet in length, four feet wide, and extended from the street to the front porch of the house, then to the kitchen, and from

the kitchen to the garage and chicken house. The walk consisted of planks nailed crosswise to stringers, which were, in turn, supported by wooden blocks resting on the ground. The blocks could not be seen at that time because of the flooring and the grass that was growing along the walk.

On September 25, 1934, Alice Estep, while walking along the walk from the kitchen to the chicken house, was thrown forward and downward, due to the giving way of a block under one of the stringers. This block had rotted and gave way under the weight of respondent. She fell forward and slightly off the side of the walk, striking her left temple bone, left eye, and left side of her head against another block supporting part of the walk. Her testimony was to the effect that she was somewhat dazed by the fall, that her face turned black and was swollen for several days to such an extent she could not wear her glasses, that she suffered pain in her head for a year, her eye would burn and hurt when she didn't wear colored glasses, and that she could see but little light and nothing more. She further testified that this condition was not at all present before the injury.

Shortly after her injury, respondent went to see Dr. Graham, who made an examination and suggested to her that she see a specialist. After that, she went to Dr. O. L. Adams, an eye, ear, nose and throat specialist, who examined her on April 6, 1935, and on four subsequent occasions. He testified that he found a detached retina of the left eye in the temporal region and that the vision is lost in the part where the retina is detached; that respondent can see and read only from the nasal side, and that she gets some light from certain areas. He concluded that such a condition as existed could be caused from a diseased condition of the eye or from an injury; that such an injury to cause

a detachment might be mild or severe; and that there need be no penetration of the eyeball in order to bring about such condition. He was of the opinion that the jar of the fall in September, 1934, caused the detachment and the condition of the eye at the time of his examinations.

Later, on April 26, 1936, respondent was examined by three doctors, who testified afterwards for appellants. Dr. Riley, a general practitioner, testified that he found a sclerosis of the temporal and radial arteries more marked than usually occurs in a woman of respondent's age, and that he also found extremely high blood pressure. The two other doctors, Dr. Young and Dr. Bell, were eye, ear, nose and throat specialists, and said that their examination showed the vision of the right eye one-fifth normal and the left eye one-tenth normal vision. The right eye showed an arteriosclerosis of the retinal vessels and such condition was more marked in the left eye, and that the sclerotic condition of that eye was sufficient to cause the diminution of vision. They found no evidence of retinal detachment in the left eye, and that, if there had been a previous retinal detachment which had reattached itself, there would have been evidence of that fact; that the diminution of vision found was, in their opinion, caused by lack of nourishment due to the sclerotic condition and not to any trauma; and that they were of the further opinion that the loss of vision could not have been caused by a blow, as was described in the testimony.

Appellants introduced evidence to the effect that the Security Savings & Loan Society did not make a contract to repair the premises, but offered to provide lumber so that respondents could make such repairs as they desired.

Here we have a direct conflict in the evidence sub-

mitted by the parties to this action concerning the terms of a contract and the cause and extent of respondent's eye injury.

We adopt the findings of the trial court because it was in position to judge of the credibility of the witnesses testifying much better than we are, and while the testimony of appellants' specialists is persuasive, we are unable to say that the evidence which was credible to the mind of the trial court has been overcome by a preponderance of the evidence.

A case similar to this is that of *Lowe v. O'Brien,* 77 Wash. 677, 138 Pac. 295, where the tenant rented premises which were in a state of disrepair. The defendant said that he would keep the property in repair. The facts in that case were as follows:

"The house was built on piling over the water of Budds Inlet, but nothing was said about tide flats or foundation. Defendant, from time to time, made such repairs as seemed to be demanded. He put in several piles, repaired the chimney, and fixed the roof. The house was apparently insecure in the summer of 1912. Plaintiff asked defendant when he was going to fix the piling under the building, saying if defendant did not fix the house and make it safe she would have to move out. Defendant promised to have the work done soon. Defendant went east for a time. Plaintiff talked to him about repairs after he returned, and shortly thereafter the house fell into the bay."

Upon such facts, we held the landlord liable for injuries sustained by the tenant.

The facts here are almost identical with those present in the case of *Johnson v. Dye,* 131 Wash. 637, 230 Pac. 625. In that case, the court collected and analyzed prior decisions on this subject. On page 640 the court said:

"The theory of respondent in prosecuting this action is that, where a landlord lets premises to a tenant, and agrees to keep the same in reasonable repair, there

arises an antecedent duty on his part to make a reasonable inspection for obscure or latent defects, or others affecting the safety of the premises for ordinary use; that there is a greater duty of inspection upon a landlord than there is on the tenant; and where a landlord can, by ordinary diligence, discover the defect which causes the injury, it is his duty to correct the same; he is held to have knowledge of what a reasonable inspection on his part would have disclosed; that, where there is a breach of this duty on the part of the landlord, if the tenant, using ordinary care, and not knowing of the danger, is injured by reason of the defect, the tenant is entitled to recover from the landlord for such damages as may be sustained.

"The above theory of the case is sustained by our decisions in the following cases: *Howard v. Washington Water Power Co.,* 75 Wash. 255, 134 Pac. 927, 52 L. R. A. (N. S.) 578; *Mesher v. Osborne,* 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917; *Johnson v. Nichols,* 83 Wash. 394, 145 Pac. 417; *Hogan v. Metropolitan Building Co.,* 120 Wash. 82, 206 Pac. 959."

In that case, the injured tenant had rented a house under a contract where the landlord had promised to repair certain steps which were in disrepair by reason of the tops of the steps, or treads, being loose. The condition existed until the time of the injury, although the landlord promised at various times to repair that condition. The tenant was injured while sweeping the steps. She had just reached the second step when the foundation on one side gave way, causing her to fall. The cause of the fall was the rotting away of the supports under the steps. These supports could not be seen, owing to the fact that they were enclosed by planks on both ends of the structure. The landlord was held liable in the above case.

The facts in the cases just cited are entirely similar to the ones we have before us, including the contract to keep in repair, the nature of the defects, and the

time elapsing from the last promise to repair and the injury.

Upon the authority of those cases, we hold the appellants liable for the injuries suffered by respondent Alice Estep.

Appellants contend that the amount of the damages awarded was excessive, but in view of the testimony of respondent concerning her suffering since the accident and her inability to see, the testimony of the doctor who had attended her, and the findings of the trial court who had the opportunity to see her in the court room and to listen to the testimony, we cannot say that the damages were excessive.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and BLAKE, JJ., concur.