[No. 26870. Department One. March 31, 1938.]

*In the Matter of the Estate of* SAM OLSON, *Deceased.*

MILDRED M. OLSON, *as Administratrix, Appellant,* v. MELKER OLSON *et al., Respondents.*[1]

[1]Reported in 77 P. (2d) 781.

*D. R. Glasgow,* for appellant.

*Don F. Kizer,* for respondents.

SIMPSON, J.—Appeal is taken from an order of court granting a petition to remove an administratrix and to determine that decedent was a resident of the state of Montana at the time of his death.

Four brothers and sisters of Sam Olson, deceased, filed their petition in this cause, alleging that the administratrix, Mildred M. Olson, widow of the decedent, had falsely represented to the court at the time of the hearing for letters of administration that both decedent and herself were residents of Spokane county at the time of Sam Olson's death, although, as a matter of fact, both were, and had been for a long time prior thereto, residents of the state of Montana. It was further alleged in the petition that, under the provisions of the laws of Montana, the brothers and sisters of the deceased were entitled to a one-half interest in all of the personal property of the deceased. The petition prayed that the letters issued to Mildred M. Olson be revoked, or, in the alternative, a finding be made that the decedent was not a resident of the state of Washington at the time of his death.

The administratrix filed an answer, denying the residence in Montana of herself and husband, and upon the issue thus made, a trial was had to the court.

After trial, the court made its findings of fact to the effect that Mildred M. Olson falsely and fraudulently and with intent to deceive the court, at the time she applied for letters of administration of her husband's estate, testified that both she and decedent were residents of Washington, although, as a matter of fact, both were residents of Montana at the time of the husband's death.

In accordance with the findings, the court revoked the letters of administration which had been issued to Mildred M. Olson and appointed in her stead Melker Olson, a brother of decedent. The order also recited that Sam Olson, at the time of his death, was a resident of the state of Montana, and that his brothers and sisters should, on final distribution in the estate proceedings, receive one-half of the personal property of the estate. Mildred M. Olson appeals.

Appellant assigns as error the decision that she and Sam Olson were residents of Montana at the time of his death, the awarding of one-half of the personal property to the brothers and sisters of the deceased, and in removing her as administratrix of the estate.

Sam Olson died intestate July 10, 1936, in the state of Montana, leaving some real estate in Washington and personal property in Montana. He left surviving him his wife and the brothers and sisters mentioned in the petition. July 16th of that year, Mildred M. Olson, the widow, petitioned the superior court of Spokane county to be appointed administratrix of her husband's estate. At a hearing, she was duly appointed and thereafter qualified. After the filing of the final account and petition for distribution, the brothers and sisters filed the petition first referred to.

The evidence detailing the life and actions of Mr. and Mrs. Olson, as shown in the statement of facts, is summarized as follows: Sam Olson, born in Nor-

way, came to the United States during the year 1910, lived for a short time in Minnesota, and then went to Priest River, Idaho. Later, with his brother Melker, he went to Canada, took up land there, and became a naturalized citizen of Great Britain. He returned to the United States in 1918 and, after a brief stay in Seattle, went to Portland, Oregon. In 1923, he started in the logging business in Orofino, Idaho, and in 1926, married Mildred M. Nolan, the appellant.

In 1929, he started logging operations at Plains, Montana, which were continued with many interruptions until his death. In January, 1930, he went to Spokane, but returned to Plains during the same month, returning again to Spokane shortly thereafter, where he stayed until March, 1932. During that year, he purchased a farm of forty acres near Spokane and made extensive improvements thereon, furnishing it as a home, and lived in it for some time. In July, 1933, he returned to Plains, stayed there until September, returned to Spokane, remaining until April, 1934, after which time he made a trip to the World's Fair and then spent the winter in Montana. During the year 1935, and until his death, he remained at Plains, although making many trips to Spokane. It was during the year 1935 that the Spokane farm was sold, the Olsons taking a small tract nearby as part payment. The smaller tract was then improved to a slight extent and offered for sale. During most of the time that Sam Olson was engaged in the logging business, his bank account was kept in a Spokane bank; and after the forty-acre farm was purchased, he had his mail sent to the Spokane address.

The houses in which Mr. and Mrs. Olson lived in Montana were shacks, built in the most part in such a way as to be movable from place to place, though many people lived permanently in such houses. Mr.

Olson told many people that he intended to quit the logging business, move to Spokane, and engage in some other occupation, and to some people he spoke of that city and county as his home. He told other people he had purchased the Spokane property as an investment, and to others he spoke of Plains as his home.

His automobile license was purchased in Montana, where he paid poll tax for five years. He registered there as a voter less than a month before he died, giving on the registration card the information that he had been a resident of the state of Montana for seven years, and about a month and a half prior to registering was naturalized in the United States district court at Thompson Falls, Montana, where he gave his residence under oath as Plains, Montana. Mildred M. Olson lived at Plains before her marriage, was constantly with her husband during her married life, and registered as a voter at Plains on two different occasions, once in 1932, and the other time September 20, 1934. On the last registration card, she gave the time of her residence in the state as twenty-seven years and the county as twenty years.

After a consideration of the evidence, we are of the opinion that the trial court was correct in holding that both Sam Olson and Mildred M. Olson were, on the 10th day of July, 1936, residents of Plains, Montana.

The very definite acts of Sam Olson in buying his automobile license, paying poll tax, registering as a voter, and being naturalized in the state of Montana shortly before his death, clearly showed he intended Montana as his place of residence. What has been said concerning Mr. Olson is true of appellant, with the exception of the evidence relating to naturalization. Appellant was a witness in this case, but did not give evi-

dence concerning her intention as to residence except to say that she and her husband considered Spokane their headquarters.

It is true that there was much evidence pointing to a conclusion that their residence was in Spokane, but we must leave the weight of such evidence and the credibility of the witnesses to the determination of the trial judge. We cannot say that the evidence which was credible to the mind of the trial court has been overcome by a preponderance of the evidence. *Estep v. Security Sav. & Loan Society,* 192 Wash. 432, 73 P. (2d) 740.

"Coupled with the fact of residence must be the animus manendi, the present settled intention to remain in the chosen locality for an indefinite time. Although an intention to remain permanently is mentioned as essential in some decisions, an intention to remain permanently, as distinguished from indefinitely, is not necessary, nor need there be an intent to make the new place a permanent home for the remainder of one's life. The question of residence or domicile is one of intention. A change of residence or domicile depends upon intention, . . ." 19 C. J. 404, § 13.

There are two essentials to residence or domicile: First, actual living in a place; and second, intent to make it the home with the present intention of remaining there. 1 Beale, The Conflict of Laws (1935) 94, § 9.5.

In the case of *In re Sedgwick,* 223 Fed. 655, it was said:

"A person cannot, simply by choosing and intending in good faith to make a certain place his domicile, effect that result. The intent to change domicile is ineffective, unless supported by adequate facts; there must be an actual removal animo manendi. 'The change cannot be made, except facto et animo. Both alike are necessary. Either without the other is insufficient'."

██ Appellant contends that the court had no right to remove her, even though she was a resident of Montana at the time of her appointment. She urges that the order of appointment had the force and effect of a judgment and could not be vacated or set aside.

Our statute, Rem. Rev. Stat., § 1457 [P. C. § 9892], names the following persons as not qualified to act as executors or administrators:

"Corporations, nonresidents of this state, minors, . . . And when any person to whom letters testamentary or of administration have been issued becomes disqualified to act because of leaving the state, . . . the court having jurisdiction shall revoke his or her letters. . . ."

Rem. Rev. Stat., § 1444 [P. C. § 9960], relating to a revocation of letters, says:

"Whenever the court has reason to believe that any executor or administrator has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such executor or administrator, or for any other cause or reason which to the court appears necessary, it shall have power and authority, after citation and hearing to revoke such letters. . . ."

Rem. Rev. Stat., § 1422 [P. C. § 9938], reads as follows:

"The court appointing any executor or administrator shall have authority for any cause deemed sufficient, to cancel and annul such letters and appoint other executors or administrators in the place of those removed."

These provisions of our probate laws indicate the purpose of restricting the administration of estates to residents only and to give the courts the right of con-

trol over estates and administrators. *In re Fellin's Estate,* 108 Wash. 626, 185 Pac. 604; *In re Utters' Estate,* 112 Wash. 197, 191 Pac. 836; Annotation, 1 L. R. A. (N. S.) 341, *et seq.*

That probate courts may revoke their own decrees improperly entered is well settled.

"Probate courts have always exercised a plenary jurisdiction in revoking or vacating their own decrees improperly rendered, and hence they have power to revoke letters testamentary or of administration which have been issued illegally or without jurisdiction." 23 C. J. 1100, § 274.

"Revocation is proper when it is made to appear that the supposed decedent was living at the time the letters were issued, that his last residence or the situs of his property conferred the whole jurisdiction elsewhere than in the court by which the letters were issued, that the letters were procured by fraud or a false statement or suggestion as to a material fact, that the issuance of letters was premature, . . ." 23 C. J. 1101, § 277.

In speaking of letters improperly granted, we said in *State ex rel. Neal v. Kauffman,* 86 Wash. 172, 149 Pac. 656:

"This last stated rule is especially applicable in this state where, both by constitution and by statute, the superior court, a court of general jurisdiction and as part of that jurisdiction, has cognizance of all matters of probate, with power to exercise all of the inherent functions of a court of general jurisdiction in disposing of such matters."

In the case of *In re Laack's Estate,* 188 Wash. 462, 62 P. (2d) 1087, it appeared that, after an estate had been settled, Mrs. Laack, claiming that there was still some property which needed further administration, applied to the court for appointment as administratrix. Her application being denied, she procured an appointment in another department of the same court. A petition

to revoke her letters was then filed upon the ground that she had secured her appointment by fraud, in that she had concealed the fact that, upon the same matters alleged in the petition, a different judge had previously denied her petition for appointment. The petition to revoke was granted and the administratrix discharged, the court saying:

"The order appointing appellant as administratrix d. b. n. c. t. a. was improvidently entered. A court of general jurisdiction can by virtue of its inherent powers, and without the aid of statutes, clear its records of such a judgment, no matter in what form the application so to do is made."

The probate court has general supervision of all estates, and all administrators are officers appointed by the court for the purpose of administering estates in accordance with our probate laws. To hold that a person may by misrepresentation secure a court order of appointment as administrator, or obtain an order for any other purpose in the same way, and then be protected in such wrongdoing, would be to destroy the effect and stability of our probate laws in their entirety.

Appellant makes no definite objection to the distribution of the personal property under the laws of the state of Montana, if it be found that the decedent was a resident of that state at the time of his death.

"The principle is fundamental that the law of the domicil governs the distribution of the assets of a decedent. Even when the estate is partly administered in different jurisdictions the disposition, succession to, and distribution of personal property wherever situated is governed by the law of the country of the owner's or intestate's domicil at the time of his death, and not by the conflicting laws of the various places where the property is situated. In giving effect to a foreign will courts are governed by the law of the testator's domicil." 11 R. C. L. 445, § 548.

Section 7073 of the Revised Codes of Montana (1935), pleaded and introduced in evidence, is as follows:

"When any person having title to any estate not limited by marriage contract dies without disposing of the estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided in this code and the Code of Civil Procedure, subject to the payment of his debts, in the following manner: . . .

"2. If the decedent leaves no issue, the estate goes one-half to the surviving husband or wife, and the other to the decedent's father and mother in equal shares, and if either be dead the whole of said half goes to the other. If there be no father or mother, then one-half goes in equal shares to the brothers and sisters of the decedent, . . ."

We conclude that the court was entirely correct in its findings and in the judgment rendered.

The judgment is affirmed.

MAIN and GERAGHTY, JJ., concur.

STEINERT, C. J. (concurring in the result)—I concur in the result, with the reservation that the decree of foreclosure should be subject to any probate proceedings properly and timely initiated in the state of Montana, wherein all questions affecting personal property in that state, the claims of creditors residing therein, and any inheritance tax that may be due that state, should be determined.

HOLCOMB, J. (concurring)—Most reluctantly, following my consistent rule to support the findings of the trial court unless the facts overwhelmingly preponderate against such findings, I am compelled to concur in this decision. It should be remembered, domicile may be changed very quickly, in a day or an hour. However, the trial judge saw and heard the witnesses and found against appellant's claim of domicile in Spokane county, Washington.

This result does a great injustice to appellant, who is the widow of decedent and under the law of this state would be entitled to much more than she will obtain under the law of Montana.

