[No. 16381-1-II.   Division Two.   June 22, 1995.]

*In re the Estate of* NICHOLAS A. STEIN.

Jack K. Stein, *Appellant*, v. CHRISTOPHER WELCH, ET AL., *Respondents.*

*Thomas Cline*, for appellant.

*William Delmar Robison, Timothy James Dack, Morris Brandt,* and *Morse & Bratt*, for respondents.

BRIDGEWATER, J. — Jack K. Stein appeals from a summary judgment in favor of his children, John Stein and Tami Stein, barring from probate a document Jack asserts is the 1987 will of Nicholas A. Stein. We reverse and remand.

The decedent, Jack's father and John and Tami's grandfather, died in Clark County on August 23, 1987, leaving an estate valued at over $3,000,000. A few days after the decedent's death, Jack filed a will dated March 17, 1987 in Multnomah County, Oregon, which was admitted to probate. The order admitting the will to probate declared that this 1987 will was the last will and testament of the deceased. The period wherein a challenge could have been made by John and Tami to contest the will then lapsed. Respondents assert that although assets were transferred from Washington to Oregon after his death, Nicholas Stein owned no assets in Oregon at the time of his death.

On March 7, 1988, a petition to probate a will dated July 3, 1984, was made to the Superior Court of Clark

County, Washington, and the court ordered the 1984 will admitted to probate. This order declared that the 1984 will was the last will and testament of the deceased. Thereafter, Jack had four months during which he could have brought a will contest, but did not. The 1987 will is more favorable to Jack, while the 1984 will is more favorable to John and Tami.

In Washington, Christopher Welch, Jack's stepson-in-law, was appointed as the personal representative of the Washington probate. Meanwhile, Oregon appointed Jack as the personal representative of the 1987 will. Oregon later replaced Jack as personal representative with Richard E. Paul, who in October 1988 petitioned Oregon to close probate proceedings and transfer all assets to Washington. On November 30, 1988, Oregon approved the final accounting of the estate and ordered the following:

> IT APPEARING TO THE COURT, That at the time of his death said NICHOLAS A. STEIN was a resident and inhabitant of the State of Washington, as more particularly appears in the affidavit of Christopher D. Welch, on file herein; that as the estate of said decedent should properly be probated in the State of Washington rather than the State of Oregon, a final account was filed herein;
>
> . . . .
>
> IT IS FURTHER ORDERED, That the residue of said estate be paid and distributed to CHRISTOPHER D. WELCH, personal representative of the Estate of NICHOLAS A. STEIN, deceased, in the State of Washington, for final settlement and distribution as may be determined by the Courts of that State.

No further action took place in Oregon.

Nearly a year later, in August 1989, Washington personal representative Welch petitioned the Washington court for instructions, alleging he was uncertain as to which will was the last will of the decedent. On December 20, 1989, Jack challenged the 1984 will in Washington in a "Motion to Revoke and Annul Will and Probate".

Recognizing the confusion surrounding the two wills, on

December 22, 1989, Clark County Superior Court Judge Robert Harris entered an "Order Requiring Action On Will". This order required Welch to "procure from Oregon Circuit Court an exemplified copy of the 1987 Will and enter it of record in this proceeding for the Will". Judge Harris also ordered

> Any person or persons desiring the probate and execution of the 1987 Will, or any other document purporting to be the last will and testament of the decedent, Nicholas A. Stein, shall have four months from the date of first publication of the notice or four months after the date of filing of a copy of a said published notice with the clerk of this court, which ever is later, within which to make written petition to this court (a) for the probate of the 1987 Will, (b) for the probate of any other will or (c) for a contest of the validity of any will.

On January 5, 1990, Welch filed an exemplified copy of the 1987 will in Washington. On March 14, 1990, within four months of Judge Harris's order, Jack filed in Washington a "Petition for Admission of Will to Probate Pursuant to RCW 11.20.020" for the admission of the 1987 will to probate. Jack's petition did not, however, contest the 1984 will. A few days later, John and Tami filed a petition in Washington contesting the 1987 will and requesting that the court declare the 1987 will null and void.

A year passed with apparently no action on this case. Then, on March 26, 1991, John and Tami moved for summary judgment, arguing that the 1987 will was time-barred under RCW 11.28.340. Jack filed a cross-motion for summary judgment, arguing that Oregon — through the order admitting will to probate, which was not challenged by John and Tami — established the 1987 will as decedent's last will. He contended that the Oregon decision was binding on all parties to the Washington probate proceeding under the full faith and credit clause of the United States Constitution.

On July 30, 1992, Superior Court Judge Ted Kolbaba granted John and Tami's summary judgment motion. Jack then appealed to this court.

██ In reviewing a summary judgment, an appellate

court engages in the same analysis as the trial court: a motion for summary judgment is properly granted if the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The appellate court considers the facts in the light most favorable to the nonmoving party.[1]

## I

Jack argues that Judge Kolbaba erred in granting John and Tami's summary judgment motion because the court was without authority to overrule a previous order admitting the 1987 will to probate. Jack contends that "[t]he summary judgment at issue in this appeal was entered thirty-one months after the order expressly permitting probate of the 1987 will" and that Judge Kolbaba lacked authority to review an order by Judge Harris and set the order aside. John and Tami respond that the 1987 will "has never been presented or admitted by the trial court for probate".

There is a conflict between the orders of Judges Harris and Kolbaba. To understand the conflict, a careful examination must be made of both the chronology of events and the applicable statutes.

First, in March 1988, a petition was filed to admit the 1984 will to probate in Washington, with notice being sent out to all interested parties. Jack apparently did nothing in response to this notice.

Second, on December 22, 1989, Judge Harris issued an order, reproduced in part above, which gave all parties four months to petition the court to probate the 1987 will or to contest any will within the four-month period allowed under RCW 11.28.340. On March 20, 1990, *within* the four-month period allowed by Judge Harris in his order, Jack petitioned Washington for probate of the 1987 will.

---

[1]*Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 62, 847 P.2d 440 (1993); CR 56(c).

Third, in July 1992, Judge Kolbaba granted John and Tami's summary judgment motion, effectively overruling Judge Harris's December 1989 order. Judge Kolbaba ruled that Jack's petition to probate the 1987 will was untimely for two reasons. Judge Kolbaba found Jack's petition to probate the 1987 will was brought after the four-month period prescribed by RCW 11.28.340 and thus he was barred from asserting that will. Judge Kolbaba's reasoning was based upon the fact that Washington probate began in March 1988, notice was sent to Jack, and Jack failed to do anything in response to the notice.

Alternatively, Judge Kolbaba also found that under the court's broad powers bestowed by RCW 11.96.020, Jack's petition was untimely because the petition "was brought outside the four [4] month period following notice of this probate proceeding and outside the four [4] month period after termination of the Oregon Probate proceeding". Thus, Judge Kolbaba ignored Judge Harris's order, went back to the beginning of the Washington proceeding and the end of the Oregon proceeding, and found Jack's petition to be untimely.

## A

The first issue raised is whether Jack's petition for probate of the 1987 will was timely or whether it was time-barred by RCW 11.28.340. RCW 11.28.340 furnished the primary basis for Judge Kolbaba's decision. While RCW 11.24.010 authorizes any interested person to contest the probate or rejection of a will if the person petitions the court within four months following the order admitting a will to probate or rejection, RCW 11.28.340 authorizes any interested party to offer a later will for probate:

> Unless, within four months after the entry of the order adjudicating testacy or intestacy and heirship, and the mailing or service of the notice required in RCW 11.28.330 any heir, legatee or devisee of the decedent shall offer a later will for probate or contest an adjudication of testacy in the manner provided in this title for will contests, or offer a will of the decedent for probate following an adjudication of

intestacy and heirship, or contesting the determination of heirship, an order adjudicating testacy or intestacy and heirship without appointing a personal representative to administer a decedent's estate shall, as to those persons by whom notice was waived or to whom said notice was mailed or on whom served, be deemed the equivalent of the entry of a final decree of distribution in accordance with the provisions of chapter 11.76 RCW for the purposes of:

(1) Establishing the decedent's will as his last will and testament and persons entitled to receive his estate thereunder[.]

The "notice of adjudication of testacy" must include: (1) a statement that an order from a Washington superior court adjudicating that the decedent died testate was made, and (2) a copy of the will along with a statement that the adjudication of testacy will become final unless any heir, legatee or devisee contests the will within four months after the date the will was adjudicated to be the last will and testament of the deceased.[2]

■ Here, however, the trial court erred. RCW 11.28.340 gives any interested party four months to offer a later will for probate (1) "after the *entry of the order adjudicating testacy or intestacy and heirship*", and (2) after notice containing the requirements of RCW 11.28.330 was sent to all heirs, legatees, or devisees. (Italics ours.) This statute does not bar the 1987 will because there was never an "Order Adjudicating Testacy or Intestacy and Heirship" entered, nor was there any notice meeting the requirements of RCW 11.28.330. Thus, it was impossible for the four-month time period to have commenced. RCW 11.28.340 simply should have not played any part in the decision regarding the admission of the 1987 will.

■ In short, although Jack was time-barred from contesting the 1984 will under RCW 11.24.010, he was not barred from admitting a later will under RCW 11.28.330. The offer to probate a later will does not constitute a

---

[2]RCW 11.28.330.

contest of a prior will already admitted to probate.[3] Therefore, the statute did not bar Jack's petition for probate of the 1987 will and Judge Kolbaba erred in granting summary judgment on this basis.

## B

There is a second reason why the court's order improperly denied Jack's petition. Judge Kolbaba's alternative basis for barring the petition for probate of the 1987 will was under RCW 11.96.020, which furnishes courts with very broad powers in probate proceedings. Judge Kolbaba concluded that Jack should be barred from petitioning the 1987 will (1) because Jack did not petition Washington to probate the 1987 will until more than a year after the termination of the Oregon probate in November 1988, and (2) because Jack knew the Washington probate began in March 1988 but did nothing until March 1990. In effect, Judge Kolbaba barred the 1987 will on a laches-like basis, deciding that Jack simply sat on his rights.

Several factors militate against this harsh remedy. First, the Supreme Court of Washington has held that a court of probate has inherent authority at *any* time, while an estate is still open, to admit to probate a later will than that being probated.[4] Second, determination of the decedent's wishes is the overriding factor in Washington probate proceedings. As our Supreme Court has stated:

> Courts go to the utmost possible length to carry into effect the testator's wishes, provided always that he has given them lawful expression. It is not only the testator's will which must be given effect, but it is his last will which must prevail. Where possible, the last will of a competent testator will be upheld, and courts will not, by technical rules of statutory or other legal construction, defeat the right of the testator to have effect given to the latest expression of his testamentary wishes.

---

[3]*In re Estate of Elliot*, 22 Wn.2d 334, 355-56, 156 P.2d 427, 157 A.L.R. 1335 (1945).

[4]*In re Estate of Campbell*, 46 Wn.2d 292, 295, 280 P.2d 686 (1955).

. . . ..

. . . Neither should the will of a testator be defeated, as here, by the carelessness of the persons whose duty it was to present the [will] for probate. It is not their rights which are taken away, but the right of the testator to have his will carried out.[5]

Here, Judge Kolbaba's ruling denies the probate court any opportunity to hear the circumstances surrounding the execution of the 1987 will and thus determine exactly what Nicholas Stein intended.

Thus, the court erred because it had no authority to deny the admission of a later will, apart from the application of RCW 11.28.330, which was not operative. The 1987 will was timely petitioned for admission to probate in Washington by Jack and was then timely contested by John and Tami.

## II

Jack next argues (1) that Oregon probated the 1987 will and declared it to be decedent's last will and testament; (2) that Oregon properly had jurisdiction over this matter; and (3) that Washington must therefore give "[f]ull faith and credit" to Oregon's determination under Article IV, Section 1 of the United States Constitution.

Conversely, John and Tami argue Oregon "recognized that the Decedent had no real or personal property in the State of Oregon, had died being domiciled in the State of Washington and properly closed the probate proceeding then pending before it". They characterize the Oregon Order as an "order of dismissal" from which Jack failed to appeal. Moreover, they argue that even if the Oregon order was one finding the 1987 will to be the decedent's last will, Oregon lacked jurisdiction over the estate and Washington is therefore not bound by any order made by Oregon.

---

[5]*Elliot*, 22 Wn.2d at 351 (quoting *In re Estate of Bronson*, 185 Wash. 536, 549-50, 55 P.2d 1075, 107 A.L.R. 238 (1936) (Beals, J., dissenting)).

■ A judgment rendered by a court of one state, if valid, is entitled to recognition in the courts of another state by virtue of the full faith and credit clause.[6] Generally, this means a foreign judgment must be given the same recognition and res judicata effect it would receive in the state which rendered it,[7] although a decree of a sister state may be subject to collateral attack for want of jurisdiction over the subject matter of the action or the parties to the action.[8]

■■ However, a different set of principles is applicable where probate matters are concerned. Generally, primary probate of a will should be made in the place of the testator's domicile.[9] "The principle is fundamental that the law of the domicil governs the distribution of the assets of a decedent".[10]

The probate of a nonresident's will who dies leaving property within the state affects *only* the property *within the jurisdiction* and has no effect on the validity of the will itself beyond the limited purpose of the plenary power possessed by the state with respect to property within its domain; the requirement of full faith and credit to a sister state's judgment admitting a will to probate does not give such judgment extraterritorial effect on assets in other states.[11]

■ The courts of a decedent's domicile do not have jurisdiction to control devolution of real property held in another state; therefore, the state in which real property

---

[6]U.S. Const. art. IV, § 1; *Effert v. Kalup*, 45 Wn. App. 12, 14, 723 P.2d 541 (1986); *see also* RCW 6.36, Uniform Enforcement of Foreign Judgments Act.

[7]*Idaho Dep't of Health & Welfare v. Holjeson*, 42 Wn. App. 69, 70, 708 P.2d 661 (1985), *review denied*, 105 Wn.2d 1005 (1986).

[8]*Wampler v. Wampler*, 25 Wn.2d 258, 263, 170 P.2d 316 (1946).

[9]95 C.J.S. *Wills* § 352(b) (1957); *Payne v. Payne*, 239 Ky. 99, 39 S.W.2d 205, 208 (1931).

[10]*In re Estate of Olson*, 194 Wash. 219, 227, 77 P.2d 781 (1938).

[11]95 C.J.S. *Wills* § 580 (1957); *Murphy v. Murphy*, 125 Fla. 855, 170 So. 856, 868 (1936); *Payne*, 39 S.W.2d at 207.

is located is not required to give full faith and credit to a decision of another state regarding probate of such real property.[12] When a testator executes a will devising lands in two or more states, the courts in each state will construe it as to the lands located therein as if devised by separate wills.[13]

A critical inquiry then is to determine what the Oregon court ordered. On November 30, 1988, Oregon approved the final accounting of the estate and ordered, in pertinent part, the following:

> IT APPEARING TO THE COURT, That at the time of his death said NICHOLAS A. STEIN was a resident and inhabitant of the State of Washington, as more particularly appears from the affidavit of Christopher D. Welch, on file herein; that *as the estate of said decedent should properly be probated in the State of Washington rather than the State of Oregon,* a final account was filed herein;
>
> . . . .
>
> IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED, That the final account of the administrator C.T.A. of the within estate be and it is hereby settled, approved and allowed in all respects.
>
> IT IS FURTHER ORDERED, That said administrator C.T.A. be and he is hereby authorized and directed to pay himself the sum of $24,500.00 and to pay the final fees of the special attorney for the Administrator C.T.A. and the costs of closing said estate.
>
> IT IS FURTHER ORDERED, That the sole heir at law of said estate according to the laws of the State of Oregon is: JACK K. STEIN, . . . .
>
> IT IS FURTHER ORDERED, That the sole devisees and legatees named in the Last Will and Testament of said deceased, according to the laws of the State of Oregon, are: [Jack; Tami; John; Thelma Lund; Jeffrey Cohen; and Clifford Freed.]
>
> . . . .

---

[12]*Clarke v. Clarke,* 178 U.S. 186, 195, 20 S. Ct. 873, 876, 44 L. Ed. 1028 (1900); *In re Estate of Hannan,* 246 Neb. 828, 523 N.W.2d 672, 674 (1994).

[13]*Trotter v. Van Pelt,* 144 Fla. 517, 198 So. 215, 217, 131 A.L.R. 1018 (1940).

*IT IS FURTHER ORDERED, That the residue of said estate be paid and distributed to CHRISTOPHER D. WELCH, personal representative of the Estate of NICHOLAS A. STEIN, deceased, in the State of Washington, for final settlement and distribution as may be determined by the courts of that State.*

(Italics ours.)

The Oregon court thus found that the decedent was domiciled in the State of Washington. It also transferred all assets to the State of Washington and did not distribute any assets, apart from fees. The general rules outlined above allow the Washington probate court to determine which will was the decedent's last will and testament as to those assets that were not in Oregon at the time of his death because Washington was the decedent's state of domicile. Thus, the Washington probate court is free to determine which will was the decedent's true will in regard to his assets in Washington at the time of his death, including his Washington real estate.

The Oregon order, which found the 1987 will to be decedent's true will, can apply only to the assets in Oregon at the time of his death because Oregon was not the state of domicile. The Oregon court's order has no force beyond Oregon's borders. Thus, Washington is not required to give full faith and credit to Oregon's order, except as to those assets which were in the State of Oregon at the time of the death of the decedent and were transferred to Washington for distribution.

From the record we cannot determine if all of the assets were in the State of Washington prior to the death of the decedent. Clearly, the probate court must hold an evidentiary hearing to determine if the decedent had any assets in Oregon at his death. If there were no assets in Oregon at the time of the decedent's death, then the Oregon order regarding the 1987 will is of no effect.

### III

In conclusion, we reverse and remand to the probate court. Upon remand, the probate court must conduct a

will contest to determine if the 1987 will was the last will and testament of Nicholas Stein. If the probate court determines that the 1987 will was not the true will, then the Washington estate will be distributed under the terms of the 1984 will. Conversely, if the probate court determines that the 1987 will was the true will, then the Washington estate will be distributed under the terms of the 1987 will.

The probate court must also determine whether any assets were in Oregon at the time of the decedent's death and thus whether the Oregon court had jurisdiction to conduct probate. If Nicholas Stein had assets within Oregon, then Oregon properly had jurisdiction and all Oregon assets, real or personal, will be distributed according to the terms of the 1987 will, which the Oregon probate court held to be the last will of the decedent. However, it must be stressed that the Oregon order will have no effect on the distribution of the Washington estate. Conversely, if the court finds the Oregon assets were transferred to Oregon only after the death of the decedent, then all assets will be distributed according to the outcome of the Washington will contest.

Reversed and remanded.

HOUGHTON, A.C.J, and FLEISHER, J., concur.

Reconsideration denied August 4, 1995.

Review denied at 128 Wn.2d 1014 (1996).