[No. 20181-0-II.  Division Two.  December 5, 1997.]

*In the Matter of the Estate of* JACK FRANKLIN TOLSON.

CAMILLE TOLSON-LAFONT, ET AL., *Appellants*, MARY H. ARDEN, *as Guardian*, ET AL., *Respondents*.

*Laina Tolson* and *Camille Tolson-Lafont*, pro se.

*Sharon Townsend*, pro se.

*Charles E. Gallup* of *Schwabe, Williamson & Wyatt*; and *Mary H. Arden* of *Arden & Brandenburg, P.S.*, for respondents.

MADSEN, J.* — In this probate proceeding, the trial court found that Decedent Jack Tolson was domiciled in Washington at the date of his death. A California court had previously found Tolson to be domiciled in California. Tolson's daughter and granddaughter appeal, arguing that the trial court in Washington erred in refusing to give collateral estoppel effect to the California judgment. We conclude that the trial court erred and reverse.

## Facts

On December 10, 1993, Jack F. Tolson (Decedent) died in his mobile home located in Vancouver, Washington. His daughters, Sharon Townsend and Laina Tolson, filed a petition to probate Decedent's holographic will dated September 20, 1993, in the San Joaquin County Superior Court, California. The petition listed San Joaquin County as Decedent's residence. The will itself indicated it was executed in Vancouver, although this fact is disputed by Appellants. The will left two percent of Decedent's estate to Terrance Michael Tolson (son of Decedent) and divided the remainder equally among Decedent's two daughters and his granddaughter, Camille Tolson-Lafont. Among other things, the estate included the mobile home in Vancouver and a home in Stockton, California. The petition for probate of Decedent's holographic will was granted by the California court on March 29, 1994, and letters of administration were issued to Susan Patterson as public administrator for the estate.

On March 17, 1994, Charles Gallup, an attorney practicing in Washington, filed a Request for Special Notice in the California court pursuant to § 1250 of the California Probate Code on behalf of Terrance Tolson. Gallup requested that all documents in the proceeding that were to be sent to Terrance Tolson be delivered "to the care of his attorney, Charles E. Gallup." Clerk's Papers (CP), at 111.

---

*Justice Barbara A. Madsen is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

On July 12, 1994, Gallup began proceedings for intestate succession in the Clark County Superior Court. Letters of Administration were issued to Gallup as personal representative for the estate on July 19, 1994.

On August 15, 1994, Laina Tolson filed an application for admission of Tolson's will to probate as a foreign will in the Clark County Superior Court, Washington. The application listed the Decedent as a resident of Washington State and did not object to Gallup's serving as personal representative. The court entered an ex parte order admitting the will and appointing Gallup as the personal representative. The order was entered by a different judge than the one presiding in this case, and was done without notice to Gallup. Meanwhile, in California, Susan Patterson filed a petition to determine domicile of the Decedent because of the conflicting evidence regarding that issue. In that proceeding, Ms. Patterson requested a ruling of dual domicile in Washington and California and distribution of the respective property according to the laws of each state. On October 7, 1994, the California court held a hearing on this issue. On December 28, 1994, the California court issued a statement of intended decision rejecting dual domicile, admitting the holographic will to probate in California, and setting ancillary administration in Washington. Gallup did not file an objection to the California court's decision, and a final order issued on January 17, 1995. At that time, the will was admitted nunc pro tunc as of January 31, 1994, the original date of petition.

On December 14, 1994, while the petition to recognize dual domicile was still pending in California, Gallup filed a petition to determine the validity of Tolson's holographic will in Clark County Superior Court. In his petition, Gallup acknowledged that the domicile issue was pending in the California court and asked for the court's guidance in administering the estate. At Gallup's request, the trial court also appointed Mary Arden as guardian ad litem for Terrance Tolson.

On January 27, 1995, the Clark County Superior Court

held a hearing to determine the validity of the holographic will. Laina Tolson and Camille Tolson-Lafont (Appellants), acting pro se, filed a motion to dismiss, arguing that collateral estoppel prevented the court from relitigating the issue of Decedent's domicile. The hearing was continued to April 7, 1995, and a letter opinion was issued on April 24, 1995. The court declined to dismiss the Washington action, ruling that the elements for collateral estoppel had not been met because the application for admittance of a foreign will stated that the Decedent was a resident of Washington State. The court reasoned that reliance on this statement could have lulled Terrance Tolson into inaction. The court also determined that the Full Faith and Credit Clause did not apply in this case because domicile is a jurisdictional issue.

A domicile hearing was conducted in Clark County on June 29, 1995, and on November 17, 1995, the court issued findings of fact and conclusions of law determining that the Decedent was domiciled in Washington. The order revoked admission of the foreign will into probate in Washington.

## Analysis

Initially, Appellants argue that Gallup has no standing to contest the foreign will admitted in Washington. They argue that there was no valid timely contest of the will as well. Appellants cite RCW 11.24.010 as the basis for their contention that a petition questioning the validity of the will qualifies as a will contest. Accordingly, they argue that only a person with a pecuniary interest has standing to bring a will contest, citing *In re Estate of O'Brian*, 13 Wn.2d 581, 126 P.2d 47 (1942).

Gallup contends that the petition to the court was a request for direction when he was unclear how to proceed to administer the estate. He alleges that he believed the Decedent was domiciled in Washington and all the evidence indicated the same. He requested the hearing to clarify the matter, and make a final determination so he could proceed

with administration. Gallup argues that since he did not have nonintervention powers, he was required to obtain a court order to distribute the assets. Gallup denies that he filed a will contest.

RCW 11.96.070(1)(c) allows a person with an interest in the administration of an estate of a deceased person to have a judicial proceeding for the declaration of rights or legal relations including "[t]he determination of any question arising in the administration of the estate or trust, including without limitation questions of construction of wills and other writings." The statute further defines a person with an interest in the estate to include the personal representative and a guardian ad litem. RCW 11.96.070(4)(b), (c). A proceeding under RCW 11.96.070(1) is in the nature of a declaratory judgment action. As personal representative of the estate, we conclude that Gallup had standing to request assistance from the superior court in determining disposition of the estate assets under that provision.

It is unclear, however, whether Gallup's petition was made pursuant to RCW 11.96.070(1)(c) or RCW 11.24.010, which provides for contest of a will.[1] The trial court appears to have treated Gallup's petition to determine the validity of Decedent's will as a will contest.

Appellants argue that Gallup's petition was actually a will contest and that it was untimely. The statutory limitation period to contest the validity of a will is four months. RCW 11.24.010. Under RCW 11.96.009(1)(a) and (b) a superior court in Washington has original jurisdiction to probate an estate when either a nonresident or a resident of this state dies in the state. The Decedent died in Clark County, where he had a mobile home at the time of death. Therefore, Clark County Superior Court had jurisdiction of the assets located in Washington for probate purposes. RCW 11.96.050(2)(b). Gallup filed a petition to determine the validity of the will on December 14, 1994, one day

---

[1]The parties do not discuss, nor do we decide, whether RCW 11.96.070(c) authorizes the court to determine the validity of a will.

before the elapse of the limitation period for contesting a will. Therefore, if the Clark County proceeding was a will contest, it was timely.

Appellants also argue that Gallup breached his fiduciary duties as personal representative by taking sides with Terrance Tolson in a will contest. In *Estate of Kvande v. Olsen*, 74 Wn. App. 65, 72, 871 P.2d 669 (1994), Division I of this court ruled that a personal representative may be obligated to present his position in a probate matter where there is a dispute as to distribution because of his duty to defend the estate from invalid and doubtful suits. While we are troubled by Gallup's apparent conflicting obligations to Mr. Tolson and the Decedent's estate, we note that the court appointed a guardian ad litem for Respondent Tolson. She was most certainly in a position to contest the will. We find no merit to Appellants' challenges based on lack of standing and timeliness.

The Appellants next contend that the Clark County Superior Court erred in considering the question of domicile because (1) it was required to give full faith and credit to the California decision, and (2) Terrance Tolson is estopped from attacking the validity of the will or the California decision on domicile because he did not make any objection to the California proceeding.

The Full Faith and Credit Clause, art. IV § 1 of the United States Constitution provides:

> Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.

The Full Faith and Credit Clause provides a means for ending litigation by putting to rest matters previously decided between adverse parties in any state or territory of the United States. Were it not for this constitutional provision, "adversaries could wage again their legal battles whenever they met in other jurisdictions." *Riley v.*

*New York Trust Co.*, 315 U.S. 343, 349, 62 S. Ct. 608, 86 L. Ed. 885 (1942). The full faith and credit provision requires that "where a state court has jurisdiction of the parties and subject matter, its judgment controls in other states to the same extent as it does in the state where rendered." *Id.* "A judgment rendered by a court of one state, if valid, is entitled to recognition in the courts of another state by virtue of the full faith and credit clause." *In re Marriage of Effert*, 45 Wn. App. 12, 14, 723 P.2d 541 (1986). *See also* 47 AM. JUR. 2D *Judgments* § 1218 (1969). "If the foreign court had jurisdiction of the parties and of the subject matter, and the foreign judgment is therefore valid where it was rendered, a court of this state must give full faith and credit to the foreign judgment and regard the issues thereby adjudged to be precluded in a Washington proceeding." *In re Estate of Wagner*, 50 Wn. App. 162, 166, 748 P.2d 639 (1987) (quoting *State ex rel. Eaglin v. Vestal*, 43 Wn. App. 663, 667, 719 P.2d 163 (1986)).

This constitutional provision has been codified by both Congress, 28 U.S.C. § 1738 (1994), and the Washington Legislature, RCW 6.36.025. Under Washington law, a foreign judgment properly filed "has the same effect and is subject to the same procedures, defenses, set-offs, counterclaims, cross-complaints, and proceedings for reopening, vacating, or staying as a judgment of a superior court of this state and may be enforced or satisfied in like manner." RCW 6.36.025(1).

The trial court held that the Full Faith and Credit Clause did not apply in this case because the determination of domicile is a jurisdictional issue. Nevertheless, the court went on to analyze whether to give the California court's determination of domicile collateral estoppel effect and concluded that the elements of estoppel were not met.

■ ■ Subject to the Full Faith and Credit Clause, a sovereignty will determine personal and property rights within its territory. *Riley*, 315 U.S. at 349-50. The will of a decedent may be admitted to probate, and an executor or administrator appointed, in any state: (a) where the

decedent was domiciled at the time of death; or (b) where there are assets of the estate at the time of decedent's death; or (c) where there is jurisdiction over the person or property of one who is alleged to have killed the decedent by his wrongful act, if permitted by statute. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 314, at 359 (1971). The primary probate of a will generally lies with the court of the state and county in which the decedent was domiciled. *In Re Estate of Stein*, 78 Wn. App. 251, 261, 896 P.2d 740 (1995). Ancillary probate may lie in any state in which property of the decedent has a situs. *Hatch v. United States*, 29 F.2d 213 (N.D.N.Y. 1928).

In the context of a probate action, it is fundamental that the law of the domicile governs the distribution of the assets of a decedent. *In re Estate of Stein*, 78 Wn. App. at 261-62; *In re Estate of Olson*, 194 Wash. 219, 227, 77 P. 781 (1938). Although the law of the domicile determines the right to succession and distribution of the personal property that has its physical situs in a foreign jurisdiction, the existence of an estate belonging to a nonresident decedent in a foreign state may make it subject to an ancillary administration under the laws of such state. *In re Estate of Glassford*, 114 Cal. App. 2d 181, 189, 249 P.2d 908, 34 A.L.R.2D 1259 (1952). Generally speaking, courts of ancillary jurisdiction are bound by the Full Faith and Credit Clause to accept the adjudication of courts of domiciliary jurisdiction on the question of a will's validity. *In re Estate of Randall*, 8 Wn.2d 622, 629, 113 P.2d 54 (1941).

Respondents contend that the Full Faith and Credit Clause has no application in this case because under Washington law, courts of this state are not bound by any foreign decision relating to the distribution of assets located in the State of Washington. Respondents rely on *In re Estate of Stein*, 78 Wn. App. at 261, to support their position. In that case, the circuit court in Oregon found that the decedent was domiciled in the State of Washington. Appellant there argued that Oregon's finding regarding the validity of the decedent's will was binding on Washington under U.S. Const. art. IV, § 1, the Full Faith and Credit

Clause. The Court of Appeals reasoned, however, that because Oregon had determined the decedent was a Washington domiciliary, a determination regarding the validity of his will in an Oregon probate proceeding was not entitled to full faith and credit in Washington. *In re Estate of Stein*, 78 Wn. App. at 260-61.

Given the ancillary nature of the probate proceedings in Oregon, the court's reasoning there does not support Respondents' here. Respondents fail to recognize the significance of Oregon's finding of Washington domicile to the *Stein* court. Since Oregon determined that the decedent's domicile was Washington, the *Stein* court simply applied the conflict of laws provision that the law of the domicile will determine questions regarding will validity. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 314 (1971); EUNICE L. ROSS & THOMAS J. REED, WILL CONTESTS § 10.1, .2 (1992); *In re Estate of Randall*, 8 Wn.2d at 629. Here, the California superior court found the decedent was domiciled in California, not in Washington. *Stein* is inapplicable.

Although there are few exceptions to application of the Full Faith and Credit Clause, enforcement of a judgment under that provision can be challenged by a showing that the court rendering judgment lacked jurisdiction. 18 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4467 (1981). In the probate context, a determination of domicile involves a jurisdictional fact. Because domicile is jurisdictional, Respondents argue that the Full Faith and Credit Clause does not prohibit him from collaterally attacking the California superior court's determination of domicile.

While Respondents may be correct in a general sense, it is also well settled that if the jurisdictional question has been litigated in the rendering court, principles of res judicata attach to the jurisdictional ruling and preclude relitigation. A judgment regarding domicile cannot be attacked collaterally, except for fraud or deceit, by one who is a party to the proceeding. *See In re Sankey's Estate*, 199 Cal. 391, 399, 249 P. 517 (1926) (determination by probate

court as to residence of deceased at time of death is final in all collateral proceedings); *Hopper v. Nicholas*, 106 Ohio St. 292, 140 N.E. 186 (1922) (finding of residency by surrogate's court is binding upon parties before the court in proceeding to admit will to probate and entitled to full faith and credit); *Marin v. Augedahl*, 247 U.S. 142, 149, 38 S. Ct. 452, 62 L. Ed. 1038 (1918) (where the court has jurisdiction to determine the fact, and the party is before the court, the party cannot collaterally attack the judgment whether the facts before the court warranted the judgment). "A judgment in administration proceedings by a competent court of any state will be held conclusive in other states as to the issues determined upon all persons who were subject to the jurisdiction of the original court if the judgment is conclusive upon such persons in the state of rendition." RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 317, 367 (1971). *See also In re Estate of Fischer*, 118 N.J. Eq. 599, 605, 180 A. 633 (1935) (if grant of letters is an adjudication of domicile, then parties to that proceeding, who had opportunity to be heard, are bound).

In *Riley*, 315 U.S. 343, the Supreme Court considered the application of the Full Faith and Credit Clause in an interpleader proceeding in Delaware to determine whether stock belonging to the decedent could be claimed by the executors appointed in Georgia or by the administrator c.t.a. appointed in New York at the request of the State of New York. The Georgia courts had admitted the will to probate and made a finding that the decedent was domiciled in Georgia. All of the beneficiaries of the will and heirs at law were parties. The Court held that the Constitution does not require recognition of a finding of domicile when that finding is challenged in another state by one who was not subject to the jurisdiction of the rendering state. However, the Court specifically noted that it was not concerned with the constitutional effect of a judgment in a probate proceeding against one who, although a party to that proceeding, attempts to raise the question of domicile in another jurisdiction. *Riley*, 315 U.S. at 346-48. The Court pointed out that if the objector was privy to the proceed-

ings in state A, state B would be precluded by the Full Faith and Credit Clause from redetermining the issue of domicile. *Id.* at 353 n.13.

We conclude the that the Full Faith and Credit Clause of the United States Constitution applies to a judgment determining jurisdictional facts, such as place of domicile, where the rendering court had probate jurisdiction.

In this case, the California superior court had jurisdiction to admit decedent's will into probate since Decedent had a residence in California at the time of his death. His heirs under the will alleged the Decedent's residence to be San Joaquin County, California. The California court appointed a public administrator who filed an action to have the court determine domicile. The beneficiaries and heirs at law were notified and given the opportunity to be heard. Respondent Gallup, then personal representative in Washington, had notice of the proceeding and appeared specially on behalf of beneficiary, Respondent Tolson. Under the circumstances presented, we find that California had jurisdiction to decide Decedent's domicile and that the California order is entitled to full faith and credit in Washington.

The next issue is whether the California court's determination of domicile is subject to collateral attack in these proceedings. Collateral estoppel promotes the policy of finality by preventing relitigation of an issue on which all parties have had a full and fair opportunity to present a case. *In re Marriage of Mudgett*, 41 Wn. App. 337, 342, 704 P.2d 169 (1985). The test for application of collateral estoppel includes four elements which must be answered in the affirmative.

(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Will the application of the doctrine

not work an injustice on the party against whom the doctrine is to be applied?

*Id.*

Turning to the first element, we find that issue decided in the California judgment is identical to that raised in the Washington proceeding. The public administrator petitioned the San Joaquin County Superior Court to find the Decedent was domiciled in both Washington and California. The California court declined to do so and determined the Decedent was a California domiciliary. Respondents' petition in Clark County Superior Court also sought a determination that the Decedent was a Washington domiciliary.

The second element is also met since the California court conclusively determined that Decedent was domiciled in California at the time of his death and entered a final order to that effect. Based on that determination, the California court ordered a distribution of the estate.[2]

As to the third element, the California court held a hearing on October 7, 1994, regarding questions of dual domicile, and admittance of Decedent's holographic will in California. All beneficiaries and heirs at law received proper notice of the hearing. The personal representative of the California estate was represented, and the Appellants appeared to present their evidence. Respondent Gallup entered a request for Special Notice in the California proceeding after probate was begun there. In that request, he represented that Terrance Michael Tolson also requested notice, and that all notices be sent to him care of "his attorney" Charles Gallup. CP at 111. Although Gallup never entered an actual appearance as Tolson's attorney, his failure to correct that statement, and his continued receipt of all legal notices that were directed to Mr. Tolson belies his present contention that he does not and never has represented Mr. Tolson. Although neither Tolson nor Gallup appeared in the California domicile hearing, each received

---

[2]The estate was not closed, however, because California had ordered ancillary administration in Washington. The estate would necessarily be held open until the Washington assets were distributed.

proper notice and was afforded the fair opportunity to be heard in that adjudication.

The final element involves the question of injustice to the party against whom the doctrine is being applied.[3] The trial court found this element was not satisfied. If the Washington court is estopped from determining that domicile of the Decedent is in Washington, Mr. Tolson receives two percent of the estate. If he takes under intestacy, he receives one third of the estate. The judge noted that the petition to admit the Decedent's will as a foreign will stated Decedent was a Washington resident and it "would have a lulling effect and it would be inequitable to estop a party with this pleading in the file." CP at 272.

Residency and domicile are two distinct concepts, however. "Residence" indicates where a person lives while "domicile" signifies the place where a person intends a fixed and permanent home. *Schreiner v. Schreiner*, 502 S.W.2d 840, 843 (Tex. Civ. App. 1973). Thus, a statement that Decedent was a "resident" of Washington does not address the legal issue of domicile. Moreover, the impact of the statement in the petition to admit Decedent's will is further diminished by the fact that it was filed before the domiciliary hearing in California, in which Appellants forcefully urged the Decedent was a California domiciliary. Additionally, the petition was presented ex parte and in the course of the Washington proceeding; Respondent Gallup asserted, and the court found, that he was not given notice of the petition. Thus, it is difficult to see how the petition would influence Respondents' actions in the California proceeding.

Moreover, cases discussing the injustice element focus on the question of whether there was a full and fair hearing on the issue. Respondents allege that this element is not satisfied because the California hearing focused on the issue of dual domicile. The California court found there was no precedent to support a finding of dual domicile and cited a long history of cases rejecting this theory on the

---

[3]It is important to note that Respondent's action was filed only to assist Respondent in distributing estate assets to the beneficiaries and heirs at law. Respondent was not seeking guidance with reference to tax or creditor claims.

premise that a person can have only one domicile for jurisdictional purposes. All parties at the hearing agreed that if there could only be one domicile, then it was California. Therefore, Respondents argue, a full and fair hearing did not occur because no one objected to California domicile.

Appellants respond that all parties were properly given notice of the hearing regarding dual domicile in California. Respondent Gallup received notice both as personal representative of the Washington estate, and as attorney for Mr. Tolson. In addition, notice and copies of the memoranda regarding the hearing were sent directly to Mr. Tolson in care of Harborview Hospital. The individual decisions of Gallup and Tolson not to attend the California domicile hearing is not a defense that a full and fair hearing was not conducted. In addition, the California judge sent out a notice of intended decision to all parties three weeks before the final decision was entered on January 17, 1995. An objection could have been filed during this period to preserve Mr. Tolson's rights.

We agree with Appellants that the fourth element is met in this case. All beneficiaries and heirs at law were notified of the hearing. Mr. Terrance Tolson was represented by counsel. The California court had the issue of domicile directly before it and could have determined that the Decedent was a Washington domiciliary had Tolson or Gallup objected to California as Decedent's domicile. Also, the court sent the parties a statement of intended decision three weeks prior to its final decision presenting ample opportunity for objection.

Additionally, a basic principle underlying the law of wills is that an individual has the right and freedom to dispose of property according to his or her private desire. *In re Estate of Hastings*, 88 Wn.2d 788, 796, 567 P.2d 200 (1977). *See In re Estate of Meagher*, 60 Wn.2d 691, 692, 375 P.2d 148 (1962) (the right to dispose of one's property by will is not only a valuable right, but is one assured by law and protected by statute). RCW 11.12.230 requires that the

court make all possible effort to reach a result intended by the testator. The Decedent in this case wrote a will. It was not facially valid in Washington because there were not two witness signatures on the document. However, it was admitted as a valid foreign will in Washington. Applying collateral estoppel to the determination of domicile carries out the Decedent's intent in this particular case.

We conclude the trial court erred in failing to give collateral estoppel effect to the California court's determination of domicile.

The final issue presented is whether the trial court properly awarded fees to the guardian ad litem out of estate assets. After the appeal was filed in this case, the guardian ad litem brought a motion asking for fees from the estate. The request was for over $21,000, two-thirds of the value of the estate. In a hearing in December, 1996, the trial court awarded a reduced fee of $9,115.96. The fee included attorney fees of the guardian ad litem at $70 an hour, paralegal fees at $45 an hour, and out of pocket expenses of over $900. Appellants challenge this award on several grounds, including: (1) the claimed services were rendered for the personal benefit of the guardian ad litem, not the estate; (2) the trial court committed reversible error by awarding fees before the outcome of this appeal; (3) the guardian ad litem's conduct was not in good faith, and she should not be allowed her fees in this case; and (4) the fees are exorbitant in nature and should not have been allowed by the trial court.

Initially, it is unclear which statute the judge relied on for award of fees. Appellants claim the request for fees was made under RCW 11.96.140, which allows the court to award costs and attorney fees out of the proceeds of the estate. The statute allows broad discretion to the trial and appellate courts to determine the fees allowable "as justice may require." RCW 11.96.140. There are two other provisions, however, RCW 11.92.180 and RCW 11.88.090(9) which relate specifically to compensation of guardians, limited guardians, and guardian ad litems. We

find that RCW 11.88.090(9) is applicable in this case. This section specifically allows the guardian ad litem to receive a fee for her service. The statute requires that the fee be charged to the "alleged incapacitated person unless the court finds that such payment would result in substantial hardship upon such person, in which case the county shall be responsible for such costs." RCW 11.88.090(9). Under this section of the probate code, either Mr. Tolson or Clark County is responsible for the fees of the guardian ad litem.

We find the trial court erred in assessing the guardian ad litem's fees to the estate and we remand this matter to the trial court to determine whether fees for the guardian ad litem should be paid by Tolson or Clark County. Considering the financial position of Mr. Tolson, and his dependency upon Social Security Insurance, the trial court may find that requiring him to pay the fees for the guardian ad litem would be a great hardship.

ARMSTRONG and HUNT, JJ., concur.