5 P.3d 658 (2000)
141 Wash.2d 121
STATE of Washington, Respondent,
v.
Lanyard BERRY, Appellant.
No. 67470-1.
Supreme Court of Washington, En Banc.
Argued October 12, 1999.
Decided July 6, 2000.
*659 Seattle-King County public Defender, Neil Fox, Stephanie Adraktas, Seattle, for petitioner.
Norm Maleng, King County Prosecutor, Ann Summers, Deputy, William Berg, Deputy, Seattle, for respondent.
IRELAND, J.
We accepted review of this case from Division One of the Court of Appeals, which affirmed the defendant's conviction of four counts of first degree robbery. The sole issue before this court is whether two "stayed" California convictions were properly counted as a "strike" under the Persistent Offender Accountability Act (POAA), see RCW 9.94A.120. We hold that they were and affirm Lanyard Berry's judgment and sentence to life imprisonment without the possibility of parole.

*660 I.

FACTS

A.

Berry's Prior California Convictions
In 1975, Berry was convicted in California of voluntary manslaughter (Count I) for shooting and killing Kathleen Williams, and of assault with intent to commit murder (Count II) and assault with a deadly weapon (Count III) for shooting Willie Earl Smith.[1] During sentencing, the court and both counsel discussed California's prohibition against multiple punishments for the same act under California Penal Code section 654.
The trial court orally ruled that both assaults "arose out of one act" and ordered that the judgment and sentence on Count II be temporarily "stayed" until the sentence on Count III was served or the judgment became permanent, at which time the stay would also become permanent. See Clerk's Papers (CP) at 511-12.[2] The trial court's written ruling, however, contradicted its oral ruling. The trial court's written judgment ordered that the sentences on both assault counts would be stayed until the sentence and conviction on the manslaughter count was served or became permanent.[3] Berry appealed his convictions.
On appeal, the California Court of Appeal ordered that Berry's voluntary manslaughter conviction be lowered to involuntary manslaughter. The remainder of Berry's judgment and sentence, however, was otherwise affirmed.
On remand, the trial court modified Berry's manslaughter conviction as ordered. The trial court, however, went further and modified the original stay provisions to be consistent with its original oral ruling. The trial court removed the stay on Count III and ordered that the stay on Count II should remain in effect until both Counts I and III were served or became permanent.[4] Berry filed a writ of habeas corpus challenging the modification of the original stay provision.
In 1978, a different California trial court granted Berry's writ and held that the amendments to the stay provisions "had no force and effect" because the original trial court had no jurisdiction to amend that part of the judgment. CP at 553. Consequently, the original stay of both assault convictions remained in effect.

B.

Berry's "Persistent Offender" Sentencing
In 1997, Berry was convicted in Washington of four counts of first degree robbery. Following these convictions, the trial court sentenced Berry. In determining Berry's criminal history under RCW 9.94A.120, the State conceded and the trial court found that Berry's involuntary manslaughter conviction did not qualify as a prior strike because it was not comparable to a "`most serious offense'" in Washington. CP at 607. The trial court, however, found that Berry's 1985 robbery conviction qualified as a strike. The trial court also found that the two 1975 California assault convictions qualified as a single strike because they had never been set aside and because the one victim involved in both assault convictions was different from the victim involved in the manslaughter conviction. Based on this criminal history, Berry was sentenced as a "Persistent Offender" to *661 life imprisonment without the possibility of parole. CP at 579-80, 608.

II.

ANALYSIS
The first issue we address is whether the State could collaterally attack the stay provisions. We hold that the full faith and credit clause requires that our courts recognize the stay provisions as valid and binding. The next issue, therefore, is how these stayed convictions should be treated under Washington's persistent offender statute. We hold that the trial court properly considered them as a prior strike in sentencing Berry as a persistent offender.

A.

Collateral Attack on Out-of-State Convictions

1. California's Stay Procedure
California Penal Code section 654[5] prohibits multiple punishments, but not multiple convictions, for two or more offenses arising from the same act or indivisible course of conduct. People v. Pearson, 42 Cal.3d 351, 721 P.2d 595, 599-600, 228 Cal. Rptr. 509 (1986) (citing cases). Section 654 does not apply, however, where a single act or course of conduct is committed against separate victims. People v. Arndt, 76 Cal. App.4th 387, 395-96, 90 Cal.Rptr.2d 415 (1999) (citing cases).
To promote the purposes of section 654, the California courts developed a procedure where the courts "stay" the execution of sentences for all but one conviction arising out of each act or indivisible course of conduct.[6] The purpose of California's stay procedure is to avoid improper multiple punishments, while also avoiding leaving a defendant without any convictions if the trial court dismissed the stayed convictions at sentencing and if the nonstayed convictions were later reversed on appeal. Pearson, 228 Cal.Rptr. 509, 721 P.2d at 600-01. A stayed sentence becomes permanently stayed when the defendant's sentences on any nonstayed convictions have been served. Pearson, 228 Cal.Rptr. 509, 721 P.2d at 600.[7]
In California, permanently stayed convictions generally may not be used to enhance future sentences or in any way used to disadvantage a defendant. Pearson, 228 Cal.Rptr. 509, 721 P.2d at 601. An exception exists where the Legislature explicitly declares that stayed convictions may be used to enhance future sentences. California's "Three Strikes" law explicitly provides such a declaration. See People v. Benson, 18 Cal.4th 24, 954 P.2d 557, 560-62, 74 Cal. Rptr.2d 294 (1998) (citing, inter alia, Cal.Penal Code § 667(d)(1)(B); Cal.Penal Code § 1170.12). Consequently, Berry's stayed convictions could be used as strikes under California law. See Benson, 74 Cal.Rptr.2d 294, 954 P.2d at 560-62.

2. Full Faith and Credit
The State argues that because Washington courts do not recognize clearly erroneous convictions, we should not recognize the stay provisions that were improperly imposed under California law. The assault convictions *662 involved a victim who was different from the victim involved in the manslaughter conviction. Therefore, we agree that the California trial court appears to have mistakenly stayed both assault convictions. However, we hold that the full faith and credit clause requires that we recognize the stays as valid.
"Judgments, including criminal convictions of sister states, are generally accorded full faith and credit and their validity may not be collaterally attacked," absent constitutional infirmity. State v. Rinier, 23 Wash. App. 102, 105, 595 P.2d 43 (1979). "The Full Faith and Credit Clause provides a means for ending litigation by putting to rest matters previously decided between adverse parties in any state or territory of the United States." In re Estate of Tolson, 89 Wash. App. 21, 29, 947 P.2d 1242 (1997). A valid foreign judgment may be collaterally attacked only if the court lacked jurisdiction or constitutional violations were involved. Absent these grounds, "`a court of this state must give full faith and credit to the foreign judgment and regard the issues thereby adjudged to be precluded in a Washington proceeding.'" In re Tolson, 89 Wash.App. at 30, 947 P.2d 1242 (quoting In re Estate of Wagner, 50 Wash.App. 162, 166, 748 P.2d 639 (1987)).
We find that the full faith and credit clause applies with full force here. There is no claim that the conviction is invalid in California, or that the California court did not have jurisdiction or committed constitutional error. Rather, the only claim is that the California court mistakenly applied California law.
We note that this case is distinguishable from Washington decisions that did not recognize out-of-state judgments. See State v. Carver, 113 Wash.2d 591, 602-03, 781 P.2d 1308, 789 P.2d 306 (1989) (full faith and credit clause not violated where custody statutes authorized Washington court to modify out-of-state custody decree). Here, there was no statutory authority to modify the California judgment. Thus, the basic tenet that foreign judgments control in Washington court proceedings applies. Consequently, we find that Berry's assault convictions, including the stay provisions, must be afforded full faith and credit.
The dissent contends that "[i]f we are to give full faith and credit to the California judgment of conviction we must likewise give full faith and credit to the legal limitations on the use or meaning intrinsic to that stayed conviction." Dissent at 665. This statement, however, is clearly contrary to the repeated pronouncements of the United States Supreme Court.
While the full faith and credit clause applies in full force to judgments, its effect is lessened when the statutes or judicial decisions of another forum are at issue. Baker v. General Motors Corp., 522 U.S. 222, 232-33, 118 S.Ct. 657, 139 L.Ed.2d 580 (1997). "The Full Faith and Credit Clause does not compel `a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" Id. (quoting Pacific Employers Ins. Co. v. Industrial Accident Comm'n, 306 U.S. 493, 501, 59 S.Ct. 629, 83 L.Ed. 940 (1939)).[8]
In fact, it is under this doctrine that a California court, the forum to which the dissent would defer, recently held that even if an Arizona statute legally restored a convicted felon's right to possess a firearm, full faith and credit did not require California to follow Arizona's law. See People v. Shear, 71 Cal. App.4th 278, 288-89, 83 Cal.Rptr.2d 707 (1999) (affirming firearm possession conviction under California law). The California court chose to apply its own law in part because "[i]t is `the expression of [California's] domestic policy, in terms declared to be exclusive in its application to persons and events within the state.' California's `significant contact' with defendant, a California resident, creates a `"state interest[ ], such that *663 choice of its law is neither arbitrary nor fundamentally unfair."'" Shear, 71 Cal. App.4th at 288, 83 Cal.Rptr.2d 707 (alterations in original) (quoting Pacific Employers Ins. Co., 306 U.S. at 502-03, 59 S.Ct. 629; Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)).
Shear amply demonstrates that Washington law may be applied to a petitioner who is a Washington resident and who has committed his most recent offense within this state. All that full faith and credit requires is that Washington respect California's judgment of conviction, which we have done. The next issue, therefore, becomes whether Berry's stayed convictions count as strikes under the POAA.

B.

"Stayed" California Convictions as "Strikes" under the Persistent Offender Accountability Act
If a defendant is found to be a "persistent offender" in Washington under the POAA, the court must sentence the defendant to life in prison without the possibility of parole. RCW 9.94A.120(4). A "persistent offender" is defined as (1) someone who is convicted of a "most serious offense" and (2) who has previously been convicted on at least two separate occasions, (3) in this state or elsewhere, (4) of felonies which would be considered most serious offenses under RCW 9.94A.030(23) and that (5) would be included in the offender score under RCW 9.94A.360. State v. Morley, 134 Wash.2d 588, 603, 952 P.2d 167 (1998) (citing RCW 9.94A.030(27)(a)(ii)).
It is undisputed that Berry is being sentenced for a "most serious offense"  first degree robbery. It is also undisputed that Berry has been previously convicted on at least two separate occasions in this state or elsewhere. Finally, it is undisputed that the assault convictions, absent the stay provisions, would be included in Berry's offender score under RCW 9.94A.360.[9] The only issue is whether the assault convictions involve "felonies that under the laws of this state would be considered most serious offenses...." RCW 9.94A.030(27)(a)(ii).
To determine whether out-of-state convictions qualify as most serious offenses under Washington law, a "comparability" analysis is conducted. The goal is to match the out-of-state crime to the comparable Washington crime and "to treat a person convicted outside the state as if he or she had been convicted in Washington." State v. Cameron, 80 Wash.App. 374, 378, 909 P.2d 309 (1996) (citing case).[10]
The first step in the comparability analysis is to identify any comparable Washington offenses by comparing the elements of the out-of-state crime with the elements of the potentially comparable Washington crimes. E.g., Cameron, 80 Wash.App. at 378-79, 909 P.2d 309 (citing case). If comparable offenses are found, the court decides which is the most comparable offense and determines its classification under Washington law. See, e.g., Cameron, 80 Wash.App. at 378-79, 909 P.2d 309. After determining its classification under Washington law, the court treats the out-of-state conviction "as if it were a conviction for the comparable Washington offense." Cameron, 80 Wash. App. at 378-79, 909 P.2d 309 (citing case).
*664 Berry argues that the traditional comparability analysis is inapplicable. Berry urges that, in addition to comparing the elements of comparable crimes, the court should also compare the "legal effect" of California's stay procedure to similar procedures in Washington. Br. of Appellant at 32. Under Berry's analysis, the stayed assault convictions are the equivalent of merged, dismissed or vacated convictions. We disagree.
Berry incorrectly characterizes the stayed assaults as dismissed or vacated under California law. There is no evidence that the assault convictions were ever dismissed or vacated. Furthermore, Berry's merger argument requires a postconviction comparability analysis. Washington's comparability analysis, however, focuses on the conviction and the elements of the offense and not on the sentencing or postjudgment remedies which do not result in either a dismissal or vacation.[11]
We have not previously included postconviction procedures under the comparability analysis and find that expanding the comparability analysis beyond an elemental analysis would unnecessarily complicate an already difficult process. Cf. Morley, 134 Wash.2d at 596, 952 P.2d 167 ("Nothing in the SRA [Sentencing Reform Act of 1981] states or implies that a sentencing court must conduct the tedious task of comparing out-of-state criminal procedures to in-state procedures."). Therefore, we find that the assault convictions remain valid "convictions" as that term is defined by the POAA. See RCW 9.94A.030(9).

III.

CONCLUSION
The goal of the POAA is to appropriately punish repeat violent offenders, including those with out-of-state convictions for violent offenses. This goal is served by including valid out-of-state convictions that have not been dismissed or vacated, that satisfy the standard comparability analysis, and that meet our most serious offense criteria. Consequently, we hold that the trial court properly considered Berry's stayed assault convictions as a strike under the POAA and affirm Berry's sentence for life without parole.
GUY, C.J., SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE, JJ., and KENNEDY, J.P.T., concur.
SANDERS, J. (dissenting).
I disagree with the majority's conclusion that Lanyard Berry's two permanently stayed, 1975 California assault convictions are properly used as a strike for the purposes of Washington's "three strikes" law. Such permanently stayed convictions are effectively dismissed or vacated under California law. Our statute does not permit us to send Berry to the penitentiary for the rest of his life for a debt a separate sovereign has cancelled.
California's legislature has adopted a rule to prohibit the injustice of multiple punishments arising out of a single act or omission. See Cal.Penal Code § 654(a) ("An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision...."). Berry's 1975 assault convictions were stayed pursuant to section 654, and we must properly give full faith and credit to California's stay determination. U.S. Const. art. IV, § 1.
As the majority correctly notes, California courts interpreting section 654 developed the stay procedure to protect defendants against multiple punishments by staying the sentences for all but one conviction arising out of each single act of criminal conduct. The underlying theory, as the majority points out, is that the defendant is not to be punished *665 multiply for multiple convictions for the same conduct, and yet the defendant will retain a record of other convictions in the event the conviction not stayed is successfully challenged on appeal. Accordingly, once the defendant serves his sentence on the nonstayed conviction, the stayed convictions become permanently stayed. Majority at 661 (citing People v. Pearson, 42 Cal.3d 351, 721 P.2d 595, 599-600, 228 Cal.Rptr. 509 (1986)). Berry finished the sentence on his involuntary manslaughter conviction in 1978, and thus his assault convictions became permanently stayed at that time.
Analyzing the effect of a section-654 stay, the California Supreme Court has noted "ample precedent" for the proposition that "section 654 prohibits the use of a conviction for any punitive purpose if the sentence on that conviction is stayed." Pearson, 228 Cal. Rptr. 509, 721 P.2d at 601 (emphasis added). A prohibited punitive purpose includes a future sentence enhancement:
Any subsequent sentences imposed on defendant can be enhanced on the basis of the convictions for which he served a sentence; but convictions for which service of sentence was stayed may not be so used unless the Legislature explicitly declares that subsequent penal or administrative action may be based on such stayed convictions.
Id. 228 Cal.Rptr. 509, 721 P.2d at 600-01. The California Supreme Court continued:
In keeping with our reason for using stays in multiple conviction situations, the defendant is penalized if he suffers enhancements based on stayed convictions. Thus to enhance a defendant's sentence because of a stayed conviction would constitute multiple punishment and is prohibited by section 654.4
4 To avoid any misconception by trial judges in future cases involving multiple convictions that have been stayed, we recommend that the stayed convictions be formally dismissed on completion of the defendant's sentence and parole on the conviction for which he is to be punished.
Id. 228 Cal.Rptr. 509, 721 P.2d at 602 (emphasis added). Thus under Pearson a defendant like Berry with permanently stayed convictions on his record could move in a California court to have his stayed convictions formally dismissed as a matter of right; however, the failure to do so at most results in a "misconception" that the stayed conviction may be used for any purpose. This rule unequivocally avoids the specter of future punishment based on the stayed convictions under California law. That is because under Pearson a stayed sentence has the practical effect of a formal dismissal of a conviction and can be used only for "subsequent penal or administrative action," id. 228 Cal.Rptr. 509, 721 P.2d at 601, if the legislature clearly mandates it. If we are to give full faith and credit to the California judgment of conviction we must likewise give full faith and credit to the legal limitations on the use or meaning intrinsic to that stayed conviction.[1]
*666 California's legislature, in effectuating California's variant of the "three strikes" law, apparently allows for the use of a stayed felony conviction as a "strike" under the California statute, but only that California statute. See Cal.Penal Code § 667(d)(1)(B). In People v. Benson, 18 Cal.4th 24, 954 P.2d 557, 74 Cal.Rptr.2d 294 (1998), the California Supreme Court was presented with the issue whether a felony conviction stayed pursuant to section 654 could count as a strike. Construing California's unique "three strikes" law, the court noted that for the purposes of that law, and only that law, section 1170.12(b) of the California Penal Code specifies, "Notwithstanding any other provision of law ...," "stay of execution of sentence" is a disposition which would not affect the determination that a prior conviction is a prior felony. Benson, 74 Cal.Rptr.2d 294, 954 P.2d at 559 (emphasis omitted) (quoting Cal.Penal Code § 1170.12(b)(1)(B)). See also Cal.Penal Code § 667(d)(1)(B).
Not only is the exception which allows the use of a stayed conviction specifically limited to the California "three strikes" statute, but, even then, the Benson court did not say, as the majority seems to think, that the California Penal Code requires a stayed conviction be treated as a strike even under that statute. Rather such a conviction may, but need not, be treated as a strike under the California statute:
[O]ur [previous decisions] affirm[] that a trial court retains discretion in such cases to strike one or more prior felony convictions under section 1385 if the trial court properly concludes that the interests of justice support such action.8
.... [W]e believe that the [three strikes] statute properly must be interpreted to permitbut not necessarily requirea qualifying prior conviction to be treated as a strike even if the sentence on the conviction has been stayed pursuant to the provisions of section 654.
8 Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which two prior felony convictions are so closely connectedfor example when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conductthat a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors.
Benson, 74 Cal.Rptr.2d 294, 954 P.2d at 564-65. The court's remand instructions ended with the caveat, "We express no opinion as to how the trial court should exercise its discretion under section 1385." In other words, consistent with Benson, a California trial judge may strike a section-654 stayed conviction completely, or he may count it as a strike for the purposes of the "three strikes" law pursuant to section 667, but he may not count it for anything besides the California "three strikes" law as a matter of law.
The Benson court bent over backward to assure its readership understood the rule was for the purposes of California's "three strikes" law only. In addition to referencing the language of the statute itself that "[n]one of the following dispositions shall affect the determination that a prior conviction is a *667 prior felony for purposes of this section: [¶]... [¶] (B) The stay of execution of sentence....", Benson, 74 Cal.Rptr.2d 294, 954 P.2d at 561 (first emphasis added) (alterations in original) (quoting Cal.Penal Code § 1170.12(b)(1)), the Benson court also noted four times in two pages, 74 Cal.Rptr.2d 294, 954 P.2d at 560-61, that a stayed conviction could be used for future enhancement only for the purposes of California's "three strikes" law. For any other purpose, the Pearson rule applies and stayed convictions cannot be used for future punitive enhancement.
Washington's Persistent Offenders Accountability Act (POAA) mandates life in prison without parole for "persistent offenders," RCW 9.94A.120(4), and defines "persistent offenders" as, inter alia, those who have been "convicted as an offender on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses...." RCW 9.94A.030(27)(a)(ii). Unlike California's variant, Washington's POAA has no "notwithstanding any other law" provision excepting stayed convictions. There is no articulable reason why we should not follow the California courts which, under Pearson, absent legislative instruction, would treat Berry's 1975 assault convictions as dismissed or vacated and bar any use of the convictions for future enhancement. More to the point, when the plain language of a penal statute does not direct a result one way or the other, and we are unable to adduce legislative history to the contrary, the rule of lenity requires we construe the act in Berry's favor. In re Personal Restraint of Sietz, 124 Wash.2d 645, 652, 880 P.2d 34 (1994) ("[T]he rule of lenity applies to the SRA and operates to resolve statutory ambiguities, absent legislative intent to the contrary, in favor of a criminal defendant.") (citing State v. Roberts, 117 Wash.2d 576, 586, 817 P.2d 855 (1991)). Conspicuously absent in the majority's analysis is an argument that the POAA or its legislative history compels the majority's metaphysical feat of enhancing Berry's sentence with a "conviction" no longer having the characteristics of a "conviction" under the law of the convicting state.
Yet it is not surprising we search the POAA in vain for mention of a stay procedure affecting convictions, as Washington law has no identical counterpart to California's section 654. Thus the question still nags us: when is a conviction really a conviction for use as a strike in our POAA? The answer is that a conviction by another sovereign, the practical effect of which is dismissal or vacation of the conviction, cannot be validly used as a convictionand thus a strikeunder the POAA.
We previously decided for the purposes of the POAA not even every prior Washington conviction qualifies as a POAA "conviction" and, thus, a strike. In State v. Cruz, 139 Wash.2d 186, 985 P.2d 384 (1999), for example, we held the sentence enhancement features of the Sentencing Reform Act of 1981 did not revive a washed-out conviction for the purposes of the POAA and thus a properly washed-out conviction could not be a "strike," even though it was a valid conviction when rendered. The same rule applies to convictions reversed on appeal or vacated on other grounds.
A conviction whose procedural disposition is effectively a dismissal in the state of its origin (under Pearson) is analogous to a washed-out conviction. Like the washed-out sex conviction in Cruz, such a conviction does not fall within the class of prior offenses available as strikes under the POAA. In light of Cruz, the majority incorrectly argues, at page 664, that since Berry was undisputedly convicted in California of these offenses, assuming they are most serious offenses under RCW 9.94A.030(27)(a)(ii), he therefore is necessarily within the ambit of the POAA. The majority misreads, and disregards, the teaching of Pearson when it simply relies upon the fact Berry's 1975 convictions were never dismissed or vacated notwithstanding, as noted above, Pearson directs trial judges to dismiss permanently stayed convictions only to avoid the very confusion which has infected our majority.
Presumably Berry could still apply in California for formal dismissal of these stayed convictions. If he does, I assume even under the majority's logic his enhanced sentence in this jurisdiction would have to be vacated. *668 The majority's holding is therefore a "triumph of form over substance; a triumph of expediency at the expense of reason." State v. Ladson, 138 Wash.2d 343, 351, 979 P.2d 833 (1999).
For these reasons I dissent.
NOTES
[1] In 1985, Berry was also convicted of robbery in California. However, there is no challenge regarding that conviction here.
[2] The trial court specifically stated that:

[T]he judgment in and sentence pronounced on count two [the first assault count] be suspensed [sic] in the judgment on count three [the second assault count], the service of the sentence imposed thereon is completely served or the judgment becomes final and the stay will become permanent.
CP at 511-12.
[3] The trial court specifically stated that:

[E]xecution of the sentence on Counts two and three be stayed until the sentence and conviction on Count one has been served or becomes permanent.
CP at 458.
[4] The trial court specifically stated that:

[E]xecution on the sentence on Count two be stayed until the sentence and conviction on Counts one and three has been served or becomes permanent.
CP at 695-96.
[5] The relevant portion of California Penal Code section 654(a) states:

An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.
[6] California's stay procedure is clearly distinct from Washington's. Compare Pearson, 228 Cal. Rptr. 509, 721 P.2d at 599-600 ("stay" serves to comply with prohibition against multiple punishments) with In re Koome, 82 Wash.2d 816, 818, 514 P.2d 520 (1973) (a "stay order" in Washington is recognized as the "temporary suspension of the regular order of proceedings in a cause...." (quoting Black's Law Dictionary 1583 (4th ed. rev.1968))).
[7] Pearson recommended that to avoid confusion in future cases involving stayed convictions, the stayed convictions should be formally dismissed after the defendant fully completes his sentence on the nonstayed convictions. Pearson, 228 Cal. Rptr. 509, 721 P.2d at 602 n. 4. As is evident here, however, California courts have not always followed Pearson's advice. See, e.g., People v. Escobar, 45 Cal.App.4th 477, 482, 53 Cal.Rptr.2d 9 (1996) (court found reversal of properly stayed count "unnecessary").
[8] See also Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 822, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); Alaska Packers Ass'n. v. Industrial Accident Comm'n, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); Bradford Elec. Light Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696 (1932), overruled in part on other grounds by Crider v. Zurich Ins. Co., 380 U.S. 39, 85 S.Ct. 769, 13 L.Ed.2d 641 (1965).
[9] To avoid potential confusion, we briefly note that issues raised in our recent decision in State v. Cruz, 139 Wash.2d 186, 193, 985 P.2d 384 (1999), concerning whether a conviction has "washed out" are not involved here. In addition to Berry's failure to properly raise this issue, this issue is nugatory because neither Berry's first degree nor second degree assault convictions would have "washed out." See RCW 9.94A.360(2) (Class A prior felony convictions "shall always be included in the offender score." Class B prior felony convictions shall be included in the offender score unless the offender has spent 10 years conviction-free since the last date of release from confinement.); RCW 9A.36.011 (first degree assault is a class A felony); RCW 9A.36.021 (second degree assault is a class B felony).
[10] The "comparability" analysis under RCW 9.94A.120 is the same as that for determining whether a foreign conviction is included in a defendant's offender score. State v. Mutch, 87 Wash.App. 433, 437, 942 P.2d 1018 (1997).
[11] See Cameron, 80 Wash.App. at 378-79, 909 P.2d 309 (court focuses on comparing elements of out-of-state and in-state crimes); RCW 9.94A.230(3) (vacated convictions not included in criminal history); see also Johnson v. Mississippi, 486 U.S. 578, 585-87, 108 S.Ct. 1981, 1986-88, 100 L.Ed.2d 575 (1988) (discussing impropriety of using reversed conviction in habitual offender sentencing) (citing cases).
[1] The majority quibbles with this reasoning, citing "repeated pronouncements of the United States Supreme Court" for the proposition that "[w]hile the full faith and credit clause applies in full force to judgments, its effect is lessened when the statutes or judicial decisions of another forum are at issue." Majority at 662 (citing Baker v. General Motors Corp., 522 U.S. 222, 232-33, 118 S.Ct. 657, 139 L.Ed.2d 580 (1997)). Furthermore, the majority argues, citing a recent California full faith and credit case, People v. Shear, 71 Cal.App.4th 278, 288-89, 83 Cal. Rptr.2d 707 (1999), "Shear amply demonstrates that Washington law may be applied to petitioner who is a Washington resident and who has committed his most recent offense within this state." Majority at 663. This is en route to the majority's conclusion "[a]ll that full faith and credit requires is that Washington respect California's judgment of conviction, which we have done." Id.

In my view, however, this argument is wrong, misleading, and inconsistent with the balance of the majority's opinion because it affords no credit to the order of stay, which is also the judgment of a sister state entitled to full faith and credit.
First, the line of Supreme Court precedent the majority cites simply distinguishes between credit owed to the common law and statutes of another state, and the judgments of its court, not, as the majority confusedly states, between "judgments and statutes or judicial decisions." Majority at 662. What, after all, is a judgment if not a judicial decision? "`In numerous cases this Court has held that credit must be given to the judgment of another state although the forum would not be required to entertain the suit on which the judgment was founded.'" Baker at 232, 118 S.Ct. 657 (quoting Milwaukee County v. M.E. White Co., 296 U.S. 268, 277, 56 S.Ct. 229, 80 L.Ed. 220 (1935)).
Second, while People v. Shear, a case about comity between California and Arizona may have precedential value in California, it "amply demonstrates," Majority at 663, absolutely nothing about the disposition of this case in Washington.
Third, obviously the majority must give full faith and credit to more than California's judgment of conviction, it must also creditas it does elsewhere in the opinion, Majority at 662the judgment of the California court that Berry's conviction be stayed.
It follows from these observations that a Washington court need not act as though it were bound by California's Penal Code § 654, nor Pearson or Benson, insofar as they are considering whether these stayed convictions are to be deemed "strikes" under California's unique statute. However when a Washington court attempts to squeeze the conviction of another sovereign for every drop of punishment it may hold in Washington under the full faith and credit clause, but necessarily honors the foreign judgment that the conviction be stayed, the court must also honor the legal requirement that intrinsic to that stay order is the practical dismissal of the conviction itself. Indeed, as demonstrated supra, the defendant may, and apparently may yet, move as a matter of right for an order of dismissal in a California court of this stayed conviction. Nothing in the majority's argument changes my view that if we are going to honor an out-of-state conviction, as well as an out-of-court stay of that conviction, we must give full force and effect of that stay: refusal to do so would fail to afford the stay judgment the credit it is due.