[No. 24546-2-III.   Division Three.   January 9, 2007.]

SCM GROUP USA, INC., *Appellant*, v. PROTEK MACHINERY
COMPANY ET AL., *Respondents*.

*Theodore L. Preg* and *John K. Butler* (of *Preg O'Donnell & Gillett, PLLC*), for appellant.

*Douglas W. Nicholson* and *Erin L. Anderson* (of *Cone Gilreath Ellis Cole & Anderson*), for respondents.

¶1 SWEENEY, C.J. — Parties may certainly stipulate to the jurisdiction of the courts of a particular state by agreement. But here, an exclusive distributorship agreement providing

for jurisdiction of any dispute in the Georgia courts was terminated. And the judgment that the creditor seeks to enforce is for monies due for transactions after the termination of that exclusive distributorship agreement. We therefore affirm the trial judge's refusal to enforce the foreign judgment.

## FACTS

¶2 SCM Group USA, Inc., is a Georgia corporation. Protek Machinery Company is a Washington corporation. SCM and Protek entered into a distributorship agreement in 1999. Protek and SCM agreed that Protek would be the exclusive distributor of SCM products in this territory. The agreement required Protek to meet or exceed minimum annual sales quotas set by SCM every year. Apparently, Protek failed to do this.

¶3 SCM terminated Protek's exclusive distributorship in January 2003, but Protek was allowed to continue on a nonexclusive basis. Protek continued purchasing products from SCM and ran up a debt of $112,197 by June 2003. Protek ordered parts, tooling, and services totaling $14,315.88 between April and September 2003.

¶4 SCM sued Protek and Steve Goeke, president of Protek, to collect the debt in Gwinnett County, Georgia. SCM's complaint alleged that Protek owed it money pursuant to an exclusive distributorship agreement. The complaint also alleged that Mr. Goeke was personally liable for all of Protek's debts to SCM under the distributorship agreement. SCM alleged personal jurisdiction in the Georgia courts based on consent expressed in the exclusive distributorship agreement.

¶5 Neither Protek nor Mr. Goeke appeared in the Georgia action. And the Georgia court entered a default judgment for $136,508.05 against both.

¶6 SCM then filed the Georgia judgment in Kittitas County, Washington. It also filed a writ of garnishment with Wells Fargo Bank. The bank responded that it did not have

access to any funds. SCM also sued Protek and Mr. and Ms. Goeke in Kittitas County, Washington, for fraudulent conveyance of real property.

¶7 Protek moved to vacate the foreign default judgment and to dismiss the garnishment proceedings. The trial court vacated the Georgia judgment, dismissed the garnishment proceedings, and awarded attorney fees to Protek. The court concluded that the Georgia court did not have jurisdiction.

¶8 Protek's attorney inadvertently filed the summary judgment under cause number 05-2-00020-4, the cause number for SCM's fraudulent conveyance claim. So Protek requested judicial notice regarding the correct cause number. The court agreed, and the order granting Protek's motion for summary judgment was filed under the proper cause number.

## DISCUSSION

JURISDICTION

¶9 SCM assigns error to the trial court's refusal to extend full faith and credit to its Georgia judgment for a number of reasons. It argues that the pleadings here raised genuine issues of material facts as to whether Georgia courts had personal jurisdiction over Protek and Mr. Goeke because of their contacts within the jurisdiction of Georgia and so the court should not have resolved the case on summary judgment. SCM argues that the procedural defects here, specifically the discrepancies in the cause numbers, warrant reversal. SCM argues that the distributorship agreement, at least those portions specifying jurisdiction, remained effective and therefore jurisdiction for this dispute remained in Georgia.

¶10 Protek and Mr. Goeke respond that, first of all, Mr. Goeke was not "the party" to Protek's distributorship agreement with SCM. And more significantly, the exclusive distributorship agreement, along with its jurisdiction clause, ended when SCM terminated the agreement.

■ ¶11 We review the trial court's refusal to extend full faith and credit to this Georgia court's judgment de novo. *Tonga Air Servs., Ltd. v. Fowler*, 118 Wn.2d 718, 725, 826 P.2d 204 (1992). The question presented is whether the Georgia court had personal jurisdiction over Protek or Mr. Goeke and, of course, what the basis of that jurisdiction would be.

■ ¶12 A state exercises personal jurisdiction in the following ways: consent, domicile, residence, presence, appearance in an action, and/or doing business in a state. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 27, at 120 (1971). Effective consent to jurisdiction requires "strict conformity with the terms of the consent." *Id.* § 32 cmt. a at 130. This State need not extend full faith and credit to a foreign judgment if the foreign court imposing that judgment did not have jurisdiction over the defendant. *In re Estate of Tolson*, 89 Wn. App. 21, 32, 947 P.2d 1242 (1997); RCW 6.40.040.

■ ¶13 SCM sued Protek and Mr. Goeke in Georgia. Clerk's Papers (CP) at 33, 46. SCM alleged consent (memorialized in the exclusive distributorship agreement) as the basis for jurisdiction in the Georgia courts. *Id.* at 47. Washington courts have authority to revisit the validity of that consent. *Copeland Planned Futures, Inc. v. Obenchain*, 9 Wn. App. 32, 37, 510 P.2d 654 (1973).

■ ■ ¶14 SCM claimed personal jurisdiction over Protek in Georgia based on consent expressed in the distributorship agreement. CP at 47. But SCM had terminated that agreement. The president of SCM, John Gangone, wrote a letter to Mr. Goeke on January 2, 2003; he said: "we are hereby serving notice of termination of your distribution agreement with effect from the end of 2002." *Id.* at 68. He said that Protek could continue doing business with SCM on a nonexclusive basis. But that did not alter the fact that the exclusive distributorship agreement had ended. SCM now argues that this nonexclusive business relationship was pursuant to the "exclusive" distributorship agreement. And, therefore, Protek and Mr. Goeke still consented

to jurisdiction in Georgia. We reject that argument for several reasons.

¶15 First, Mr. Goeke never consented to jurisdiction in Georgia. "The Distributor hereby consent[ed] to personal jurisdiction" in Georgia under the distributorship agreement. *Id.* at 61. The distributor was Protek and *not* Mr. Goeke. Mr. Goeke was the president of Protek. The agreement never names Mr. Goeke as the distributor.

¶16 Second, SCM's letter to Protek was clear. SCM told Protek that the distributorship agreement was terminated. Protek's only consent to personal jurisdiction was in that agreement. So Protek's consent to jurisdiction in Georgia ended when SCM terminated the agreement.

¶17 SCM also argues that personal jurisdiction in the Georgia courts extended beyond the termination of the agreement because of this provision:

> Termination shall not affect any claim, demand, liability or right of either party hereto *arising pursuant to this Agreement* prior to the termination or expiration hereof or arising after termination or expiration in connection with any of the rights or obligations which survive termination of this Agreement.

*Id.* at 60 (emphasis added).

¶18 But again, we disagree for several reasons. First, this dispute does not arise out of this agreement. The debts here were not pursuant to the "exclusive distributorship agreement." They arose after the agreement was terminated. They were not, then, in "connection with any of the rights or obligations which *survive* termination of this Agreement." *Id.* at 60, 68 (emphasis added). They follow instead a nonexclusive sales relationship that followed the end of an exclusive distributorship.

¶19 The provision of the agreement imposing joint and several liability for obligations on all parties executing that agreement do not apply for the same reasons. The agreement ended. The accounts overdue were not pursuant to the "exclusive distributorship agreement" in any event. Protek

incurred those debts in the course of another arrangement, one for nonexclusive distribution.

¶20 SCM next argues that the Georgia court properly applied Georgia's long-arm statute because Protek and Mr. Goeke were identified as nonresident parties. It argues that "[i]n short, it would be difficult to conceive of a more comprehensive set of pleadings establishing personal jurisdiction in Georgia." Appellant's Reply Br. at 19. It points to the fact that the relationship and the business transactions between the parties were detailed in its complaint. *Id.* But its assumption is that as long as the parties' relationship is explained, then the court should assume legal theories not mentioned in a complaint. We reject that assumption. The argument ignores the necessity to plead legal theories upon which a cause of action relies. *Camp Fin., LLC v. Brazington*, 133 Wn. App. 156, 162, 135 P.3d 946 (2006).

¶21 SCM did not plead personal jurisdiction under Georgia's long-arm statute. And so the question whether the Georgia courts could properly exercise jurisdiction based on the long-arm statute was never before the Georgia court. SCM pleaded consent as its justification for personal jurisdiction. Our scope of review does not include correcting a jurisdictional defect inherent in another state's judgment. RAP 2.4. And further discovery would not change this outcome. SCM pleaded consent as a basis for jurisdiction. CP at 47. And the Georgia court asserted jurisdiction based on the allegation of consent. *See id.* at 65-66, 46-47.

¶22 Pleadings were filed under the wrong cause number. The trial court corrected this technical mistake. That was a proper exercise of discretion. CrR 7.8(a). The primary question here and in the trial court is whether the Georgia court had personal jurisdiction over Protek and Mr. Goeke. It did not. And we therefore affirm the trial court's decision to vacate the Georgia judgment.

ATTORNEY FEES

¶23 SCM next contends that the trial court improperly granted Protek and Mr. Goeke attorney fees and costs pursuant to RCW 6.27.230 because the court erroneously vacated the Georgia judgment.

¶24 But the judgment was properly vacated. And so the question is whether Protek and Mr. Goeke are entitled to attorney fees for successfully challenging the writ of garnishment. The statute clearly answers the question: "[w]here the answer is controverted, the costs of the proceeding, including a reasonable compensation for attorney's fees, shall be awarded to the prevailing party." RCW 6.27.230. Protek and Mr. Goeke are the prevailing parties. Attorney fees pursuant to RCW 6.27.230 are mandatory. And the amount of the fees is not challenged here on appeal. Attorney fees and costs should also be properly awarded on appeal. *Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 327, 877 P.2d 724 (1994); *Bartel v. Zucktriegel*, 112 Wn. App. 55, 67, 47 P.3d 581 (2002).

¶25 We affirm the decision of the trial judge and award attorney fees and costs.

SCHULTHEIS and BROWN, JJ., concur.