IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WILLIAM S. BROWN and JULIE C. BROWN, husband and wife and their marital community, | ) ) ) | No. 68095-1-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| ROD J. GARRETT d/b/a BEST AUTO LIMITED and MARK A. THOMPSON, d/b/a BEST AUTO, | ) ) ) ) | |
| Respondents. | ) | FILED: July 8, 2013 |

SCHINDLER, J. — William and Julie Brown filed a lawsuit in Parker County, Texas against Rod J. Garrett d/b/a Best Auto Limited and Mark A. Thompson d/b/a Best Auto (collectively Best Auto). The Browns obtained a judgment against Best Auto and filed it in King County Superior Court. Because the Texas court had jurisdiction over Best Auto under the long-arm statute, and Best Auto did not file a motion in the Texas court to enforce the forum selection clause in the "Vehicle Purchase Order," we reverse the King County Superior Court order vacating the Texas judgment and quashing the writ of garnishment.

FACTS

Rod J. Garrett d/b/a Best Auto Limited and Mark A. Thompson d/b/a Best Auto (collectively Best Auto) own a used car business in Washington. In April 2008, Best

Auto listed for sale on eBay a 2004 Mini Cooper with approximately 76,000 miles. The

eBay advertisement states that Best Auto sells to purchasers in North and South

America, Europe, and Australia. The advertisement describes the condition of the 2004

Mini Cooper as follows:

> **THIS CAR RUNS AS SMOOTH AS SILK.**
> . . . .
> In total, this is a clean, well cared for, smoke-free, great-driving MINI. I take great pride in the vehicles we sell and feel that you should know as much about the car as possible. Accordingly here is a list of the good and also things needing attention: All the glass is in great shape - no cracks or delam[ination] spots. Hop in, fire her up and this car starts instantly, even when cold. It idles, runs and drives as it should - strong oil pressure, strong battery and charging system, no overheating, no brake pull or alignment issues! I've driven it many miles over the past few weeks and freeway cruised at 75 MPH [(miles per hour)].
> Please look again at the interior [pictures]. The dark grey leather upholstery is all-original with the pictures giving a very accurate view of its clean, soft condition. You'll feel comfortable sitting on these firm seats for hours and they can be adjusted for height as well as forward/back and, when needed, they're heated too! The electric window lifts and [air conditioning] system all work great. Push a button and roll back the large power moonroof for that open-air drive! . . . The car is equipped with Dynamic Stability Control (DSC) operated by a dash switch that enables you to take corners on those twisty country roads at 90+ MPH! As you can probably guess from the photos, the original rubber factory mats have done a great job of protecting the clean carpets beneath. It is a bit difficult to tell from the photos, but I can see several body panels have had paintwork done sometime in the past. Don't know why as there's no history of accidents or other negatives, but my professional eye catches it on a close inspection all the same. . . I have every confidence this MINI Cooper could easily be driven cross-country tomorrow.
> We've sold many cars here on eBay over the past few years and the one thing I'm questioned about again and again is shipping. Because we're up in Washington State, at the Northwestern tip of the country, many Midwesterners and folks on the East Coast sometimes are reluctant to bid due to distance. **DON'T BE CONCERNED!** We ship cars out almost weekly and are happy to help arrange and/or work with the transporter of your choice. As outlined above, please contact me here at BEST AUTO with any questions or for suggestions. My name is Mark Thompson and my direct phone number is 206/914-1173. [A]nd, yes, it is for sale locally before this auction ends if you'd like to make an offer.

William and Julie Brown live in Aledo, Texas. The Browns read the eBay description of the Mini Cooper. At the time, the "[c]urrent bid" was listed as $10,000. On April 27, the Browns called Best Auto about the Mini Cooper. Best Auto agreed to sell the car directly to the Browns for $11,250. On April 27, the eBay advertisement states that "[t]he seller ended this listing early because the item is no longer available for sale."

On April 28, the Browns sent $11,250 by wire transfer to Best Auto. Best Auto faxed a "Vehicle Purchase Order" to the Browns. The Vehicle Purchase Order states the odometer "reads 076,115 miles." The Browns used a company recommended by Best Auto to ship the Mini Cooper from Washington to a shipment center in Mesquite, Texas.

On May 13, the Browns went to Mesquite to pick up the Mini Cooper. After inspecting the exterior of the car, the Browns called Best Auto about "several trim items." Best Auto agreed to pay the cost to repair the trim items.

The Browns took possession of the Mini Cooper. Julie Brown drove the Mini Cooper. Less than 10 miles from the shipping center, Julie noticed the air conditioning was not working and the engine temperature gauge pointed to "HOT." Julie immediately pulled over and called a tow truck. The tow truck operator took the car to the nearest authorized Mini Cooper dealership, Moritz Mini of North Arlington, Texas.

The Browns asked the mechanic at Moritz Mini to inspect the car, identify the cause of the problem, and provide an estimate. The mechanic identified a number of necessary repairs, including the need to fix the cracked radiator and front panel, a leaking valve cover gasket, and the power steering pump. The estimated cost of repairs

3

was $4,012.61. The Moritz Mini mechanic noted, "75% of Body Panels have been Re-painted." The Browns faxed the repair estimate to Best Auto.

After communicating with Best Auto a number of times, the Browns demanded Best Auto take possession of the car and refund the purchase price. The Browns said Best Auto misrepresented the condition of the Mini Cooper and that it would cost nearly half of the purchase price to make the car run properly. Best Auto suggested the Browns auction the car in Texas. Best Auto assured the Browns the auction operator would be able to sell the Mini Cooper for the purchase price. Best Auto offered to help arrange the auction and pay $350 to repair the radiator. The Browns agreed to auction the Mini Cooper. The Browns paid an additional $800 to repair the car.

On May 27, the Browns drove the Mini Cooper from Moritz Mini to the auction site in Texas. The auction company attempted to sell the car at least two different times.

On June 18, William Brown contacted Thompson to demand Best Auto refund the purchase price, pay for repairs, and accept return of the car. William stated that "the car was nothing like you represented in the ebay ad." William told Thompson that another mechanic at a dealership in Fort Worth inspected the car and "found a long list of problems including a cracked radiator, failed power steering pump, a dead [air conditioning] unit, 75% replaced and repainted panels, and obvious signs that the car has been in a wreck, including frame damage." William also expressed concern about Best Auto's failure to send the title.

> Where did you get this from? You still haven't sent us the title. . . .
> Since we have not received the title, I am wondering if this is a salvage
> vehicle or if there is some other documented sign that this was deemed
> totaled from a wreck. Our estimates from the dealer here show it will take

4

well over $4,000 to repair just to get it on the road. In addition we have spent over $2,000 for related expenses.

In mid-July, Best Auto sent the Browns the "Vehicle Certification of Ownership (Title)" to the Mini Cooper. The title states that Best Auto transferred the Mini Cooper to the Browns on April 27, 2008. Contrary to Best Auto's representation that Thompson drove the Mini Cooper "many miles over the past few weeks and freeway cruised at 75 MPH," the disclosure and release of interest by the registered owner showed that when Best Auto purchased the car on March 29, 2008, the odometer reading was 76,114 miles, and it was 76,115 miles when Best Auto transferred title to the Browns on April 27.

On August 6, 2008, the Browns filed a lawsuit against Best Auto in Parker County, Texas. The complaint alleged breach of contract, unjust enrichment, promissory estoppel, fraud, and violations of the Texas Deceptive Trade Practices Consumer Protection Act (DTPA).[1] The Browns sought economic damages for the purchase price of $11,250, reimbursement for repairs, gas, and shipping, and treble damages and attorney fees and costs under the DTPA. The Browns served Best Auto through the Texas Secretary of State by certified mail. On August 20, the Texas Secretary of State received proof of service and the return receipt from Best Auto.

On September 2, an attorney representing Best Auto informed the attorney for the Browns that Best Auto "has contacted an attorney in Texas to seek dismissal of this action" based on the forum selection clause in the Vehicle Purchase Order. The state of Washington is designated as the forum to enforce the contract in the section

---

[1] Ch. 17, TEX. BUS. & COM. CODE ANN.

addressing "Attorney's Fees and Costs." But Best Auto did not file a notice of appearance or otherwise participate in the Texas proceedings.

The Browns filed a motion for a default judgment. The Texas court entered a judgment against Best Auto that includes treble damages under the DTPA, as well as prejudgment interest, attorney fees, and costs. The judgment states, in pertinent part:

> The Court determined it had jurisdiction over the subject matter and the parties to this proceeding. No jury having been demanded, all matters in controversy, legal and factual, were submitted to the Court. Defendants, although having been duly and legally cited to appear and answer, failed to appear and answer, and wholly made default.
> Citation was served upon the Texas Secretary of State according to law and the Certificates of Service were returned to the Clerk where they remained on file for more than ten days as required by law. The court has read the pleadings and the papers on file, and is of the opinion that the allegations of Plaintiffs' Original Petition have been admitted, including the Defendants' knowing violation of the TEXAS DECEPTIVE TRADE PRACTICES ACT, that the causes of action are liquidated and proven by an instrument in writing as to Plaintiffs' actual damages, and that the causes of action are unliquidated as to Plaintiffs' costs and reasonable attorneys' fees and, on good and sufficient evidence presented to the Court, finds that the Defendants are jointly and severally indebted to Plaintiffs in the trebled sum of THIRTY NINE THOUSAND FOUR HUNDRED SEVENTEEN AND 00/100 Dollars ($39,417), plus prejudgment interest at the rate of five percent (5%) per annum beginning on July 3, 2008 (the last date an element of damage was incurred) in the amount of FOUR HUNDRED FORTY TWO AND 76/100 Dollars ($442.76) as of September 23, 2008, accruing at the rate of $5.39 per day until the date of entry of this Judgment, and that Plaintiffs should recover a reasonable and necessary attorneys' fee, which the court finds to be SEVEN THOUSAND FIVE HUNDRED NINETY THREE AND 75/100 Dollars ($7,593.75), and costs incurred in the amount of SIX HUNDRED NINETY NINE AND 00/100 Dollars ($699.00).

The Browns filed the Texas judgment in King County Superior Court, and obtained a writ to garnish the funds of Best Auto at Banner Bank.

Best Auto filed a motion to vacate the Texas judgment and quash the writ of garnishment. Best Auto argued that because the Texas court did not have jurisdiction,

the judgment was void. The Browns argued the Texas court had jurisdiction under the Texas long-arm statute[2] and Best Auto did not file a motion in the Texas court to enforce the forum selection clause. The Browns also disputed whether the forum selection clause was enforceable.

The superior court entered an order vacating the Texas judgment and quashing the writ of garnishment. The Browns appeal.

ANALYSIS

The Browns contend the King County Superior Court order vacating the Texas judgment violates the Full Faith and Credit Clause of the federal constitution, article IV, section 1, and the Uniform Enforcement of Foreign Judgments Act (UEFJA), chapter 6.36 RCW. The Browns assert the Texas court had jurisdiction under the Texas long-arm statute, and Best Auto cannot collaterally attack the judgment based on the forum selection clause. We review de novo the decision to grant or deny a motion to vacate a default judgment for lack of jurisdiction. Dobbins v. Mendoza, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997).[3]

UEFJA

Under the Full Faith and Credit Clause of the United States Constitution, a judgment rendered by one state is entitled to recognition in Washington. U.S. CONST. art. IV, § 1 (""Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."); State v. Berry, 141 Wn.2d 121, 127-28, 5 P.3d 658 (2000); Williams v. Steamship Mut. Underwriting Ass'n, Ltd., 45 Wn.2d 209, 213, 273 P.2d 803 (1954); Idaho Dep't of Health & Welfare v. Holjeson, 42 Wn. App. 69,

---

[2] TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.

[3] Under CR 60(b)(5), the court "may relieve a party or his legal representative from a final judgment, order, or proceeding . . . [where] [t]he judgment is void."

70, 708 P.2d 661 (1985). " 'The Full Faith and Credit Clause provides a means for ending litigation by putting to rest matters previously decided between adverse parties in any state or territory of the United States.' " Berry, 141 Wn.2d at 127 (quoting In re Estate of Tolson, 89 Wn. App. 21, 29, 947 P.2d 1242 (1997)).

The UEFJA codifies the Full Faith and Credit Clause. TCAP Corp. v. Gervin, 163 Wn.2d 645, 650-51, 185 P.3d 589 (2008). Under the UEFJA, creditors holding a judgment against a debtor from another jurisdiction can enforce that judgment in Washington. RCW 6.36.025. Once the foreign judgment is filed in superior court, it becomes a registered foreign judgment in this state. RCW 6.36.010(1), (2); RCW 6.36.025(1), (2).

A party can collaterally attack a foreign judgment only if the court did not have jurisdiction or the judgment violates a constitutional right, such as notice and the opportunity to be heard. Berry, 141 Wn.2d at 127-28; State ex rel. Eaglin v. Vestal, 43 Wn. App. 663, 667, 719 P.2d 163 (1986); Effert v. Kalup, 45 Wn. App. 12, 15, 723 P.2d 541 (1986). Absent these grounds, " 'a court of this state must give full faith and credit to the foreign judgment and regard the issues thereby adjudged to be precluded in a Washington proceeding.' " Tolson, 89 Wn. App. at 30 (quoting In re Estate of Wagner, 50 Wn. App. 162, 166, 748 P.2d 639 (1987)).

We review de novo whether the superior court erred in refusing to accord full faith and credit to a foreign judgment. SCM Grp. USA, Inc. v. Protek Mach. Co., 136 Wn. App. 569, 574, 150 P.3d 141 (2007); Tonga Air Servs., Ltd. v. Fowler, 118 Wn.2d 718, 725, 826 P.2d 204 (1992). A party attacking a foreign judgment has the burden of establishing lack of jurisdiction. Williams, 45 Wn.2d at 213 (Washington courts presume

8

a court of general jurisdiction in a sister state has jurisdiction over the cause and the parties "unless disproved by extrinsic evidence or by the record itself.").

Jurisdiction Under the Texas Long-Arm Statute

The Browns contend the Texas court had jurisdiction under the Texas long-arm statute and the foreign judgment was entitled to full faith and credit in Washington. We apply the law of Texas to determine whether the Texas court had jurisdiction over the parties. Indus. Fin. Co. v. Lovell, 9 Wn. App. 829, 831, 515 P.2d 1304 (1973).

The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant "doing business" in the state of Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.[4] Personal jurisdiction under the Texas long-arm statute is valid to the extent allowed by due process under the federal constitution. Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990) ("This court has decided that the broad language of the long-arm statute's doing business requirement allows the statute to reach as far as the federal constitution permits."); see also Mink v. AAAA Dev. LLC, 190 F.3d 333, 335 (5th Cir. 1999) ("Because Texas's long-arm statute has been interpreted to extend to the limits of due process, we only need to determine whether subjecting [the defendants] to suit in Texas would be consistent with the Due Process Clause of the Fourteenth Amendment.")

---

[4] The Texas long-arm statute provides:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

    (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

    (2) commits a tort in whole or in part in this state; or

    (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.

9

The Texas court had the authority to exercise personal jurisdiction over Best Auto if it "purposefully established 'minimum contacts' in the forum State," and requiring Best Auto to litigate in the forum state did not offend " 'traditional conception[s] of fair play and substantial justice.' " Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 464, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)[5] (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316, 320, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).

The requirement that a defendant purposefully establish minimum contacts ensures that a defendant "will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.' " Burger King, 471 U.S. at 475 (quoting Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 417, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

> [W]here the defendant "deliberately" has engaged in significant activities within a State, Keeton v. Hustler Magazine, Inc.,[ 465 U.S. 770,] 781[, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)], or has created "continuing obligations" between himself and residents of the forum, Travelers Health Ass'n v. Virginia, 339 U.S.[ 643,] 648[, 70 S. Ct. 927, 94 L. Ed. 1154 (1950)], he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. [Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).]

Burger King, 471 U.S. at 475-76.

Here, the record establishes Best Auto purposely availed itself of the privilege of conducting business activities in Texas. The advertisement Best Auto placed on eBay for the Mini Cooper states that Best Auto sells cars to purchasers throughout North America. It is undisputed that Best Auto communicated with the Browns in Texas by telephone, e-mail, and fax to negotiate the sale of the Mini Cooper, to obtain the wire

---

[5] (Alteration in original.)

transfer of the purchase price, and to send the Vehicle Purchase Order and title to the Browns. And after shipping the Mini Cooper to Texas, Best Auto continued to communicate with the Browns about repairs to the Mini Cooper, and coordinated with the auction company in Texas in an effort to sell the Mini Cooper at auction.

The case Best Auto relies on to argue the Texas court did not have jurisdiction under the long-arm statute is distinguishable. In Mink, a Texas resident sued a Vermont corporation for an alleged patent violation. Mink, 190 F.3d at 335. The Texas court dismissed for lack of personal jurisdiction. Mink, 190 F.3d at 335. The Fifth Circuit affirmed on the grounds that the sole contact the corporation had with Texas was through a website that did not allow the user to order or purchase products or services on-line. Mink, 190 F.3d at 336-37.

In determining whether to subject Best Auto to litigation in the forum state, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). Because Texas has a strong interest in adjudicating a dispute that involves the sale of goods to consumers residing in Texas, requiring Best Auto to litigate in Texas does not offend "traditional conception[s] of fair play and substantial justice." Int'l Shoe, 326 U.S. at 320. We conclude the Texas court had jurisdiction over the parties under the Texas long-arm statute.

Forum Selection Clause

Best Auto asserts that even if the Texas court had jurisdiction under the long-arm statute, "the forum selection clause outweighs the long arm statute jurisdiction." Best Auto claims it can collaterally attack enforcement of the Texas judgment based on the forum selection clause in the Vehicle Purchase Order. The Browns argue that because Best Auto did not file a motion in Texas to enforce the forum selection clause, it cannot collaterally attack enforcement of the judgment.

The Vehicle Purchase Order contains a forum selection clause in the paragraph addressing Attorney's Fees and Costs.

> 7.    Attorney's Fees and Costs.  If this contract is placed in the hands of an attorney by reason of Purchaser's default or to enforce any of the provisions of this contract, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs. The parties agree that the venue for any suit, action, or proceeding relating to the enforcement of this contract shall be in the county in which the Dealer's principal place of business is located within the State of Washington. The laws of the State of Washington shall be applied in the interpretation and construction of this Agreement.

Without regard to minimum contacts, parties can enter into an agreement consenting to personal jurisdiction. Kysar v. Lambert, 76 Wn. App. 470, 484, 887 P.2d 431 (1995); RAHCO Int'l, Inc. v. Laird Elec., Inc., 502 F. Supp. 2d 1118, 1122 (E.D. Wash. 2006) ("[P]arties may consent to the jurisdiction of a particular court through the use of a forum-selection clause in a contract, regardless of minimum contacts.").

In The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972), the United States Supreme Court held that a forum selection clause is prima facie valid and should be enforced unless enforcement would be "unreasonable

and unjust." The Bremen, 407 U.S. at 10, 15;[6] In re AIU Ins. Co., 148 S.W.3d 109, 111, 47 Tex. Sup. Ct. J. 1093 (2004); Voicelink Data Servs., Inc. v. Datapulse, Inc., 86 Wn. App. 613, 618, 937 P.2d 1158 (1997).

Under the UEFJA, the Texas judgment "is subject to the same procedures[ and] defenses . . . as a judgment of a superior court of this state." RCW 6.36.025(1). A party must timely raise a forum selection clause in a motion to dismiss. Voicelink, 86 Wn. App. at 623-24; Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc., 234 S.W.3d 679, 687 (Tex. App. 2007).

In Voicelink, we held that a party seeking to enforce a forum selection clause must file a motion to dismiss under CR 12(b)(3).[7] Voicelink, 86 Wn. App. at 624.

> [D]etermination of the enforceability of forum selection clauses under CR 12(b)(3) furthers judicial economy and efficiency by requiring assertion of the venue defense at a relatively early stage of the proceeding. . . . Furthermore, a determination under CR 12(b)(3) is consistent with the standard articulated by the U.S. Supreme Court and our courts for resolving motions to dismiss based on a forum selection clause, which requires submission of evidence by the party challenging its enforceability.

Voicelink, 86 Wn. App. at 624. Likewise, in Deep Water, the Texas court held that a motion to dismiss "is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit." Deep Water, 234 S.W.3d at 687.

Here, there is no dispute that Best Auto was properly served but did not file a motion in the Texas court to enforce the forum selection clause. Nonetheless, Best

---

[6] The Court in The Bremen identified a number of factors that could result in a court declining to enforce a forum selection clause, such as fraud or overreaching. The Bremen, 407 U.S. at 15.

[7] CR 12(b)(3) provides:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (3) improper venue.

Auto claims it can collaterally attack enforcement of the Texas judgment on this ground for the first time in Washington. The case Best Auto relies on, Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica, 614 F.2d 1247 (9th Cir. 1980), does not support the argument that it can assert the forum selection clause for the first time in Washington. In Gonzalez, the Ninth Circuit affirmed the order vacating a default judgment against a foreign defendant on the grounds that the defendant lacked the requisite minimum contacts with the forum state to establish long-arm jurisdiction. Gonzalez, 614 F.3d at 1253-56.

We hold that under the UEFJA and the well-established case law in Washington and Texas, Best Auto cannot collaterally attack the Texas judgment for the first time in Washington based on the forum selection clause. We reverse the order vacating the Texas judgment and the writ of garnishment.

WE CONCUR: