IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 40978-3-III |
| | ) | |
| CHARLETTA D. MORRIS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| MICHAEL SCOTT MORRIS, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — A Washington court granted Charletta Morris and

Michael Morris a divorce. Both had Public Employees Retirement System (PERS)

accounts in Nevada. Nevada law allows the nonemployee spouse to move for immediate

payment of their portion of the employee spouse's retirement benefits if the employee

spouse is eligible to retire but has not yet done so. Charletta so moved in Nevada, and the

Nevada court granted her motion. Michael sought an injunction from the Washington

court to prevent Charletta from enforcing the Nevada order. The Washington court

granted Michael's request. In doing so, it determined that Charletta had impermissibly

modified its decree by materially altering the property division.

Charletta argues (1) the Nevada court had jurisdiction to enter its order, (2) the Nevada order is entitled to full faith and credit, and (3) the Washington court erred by entering the injunction. We agree with these arguments, but this does not end the matter.

Charletta also argues that the Washington court erred in finding that the Nevada order materially altered the parties' property division. We disagree. The Nevada order would require Michael, himself, to make monthly payments to Charletta for her portion of his retirement until he retires. These monthly payments would materially alter his cash flow. Although we conclude that the Washington court erred by enjoining Charletta from enforcing the Nevada order, we do not preclude the Washington court from considering whether to modify the property division.

FACTS

In October 2021, the parties ended their long-term marriage in a mediation that settled most issues. At the time, Charletta had already retired and Michael was still working. The parties agreed to divide all assets 60/40 in Charletta's favor, except for their Nevada pension plans, referred to as their Nevada PERS, which they agreed to split 50/50.

The trial court entered the parties' CR 2A agreement on January 10, 2022. The parties then tried the remaining issues, and the court awarded Michael real property in

Nevada and ordered him to make monthly payments to Charletta to effectuate the agreed

60/40 property split.  Although Michael had planned on retiring at age 60, his earliest

retirement age, the monthly payments of $3,371 to Charletta required him to continue

working to recover from the disproportionate division of property.  The court entered the

final divorce decree on February 3, 2022.

As to the Nevada PERS accounts, the court entered reciprocal orders for how

those accounts would be divided.  The order awarding Charletta 50 percent of Michael's

Nevada PERS reads:

> [Charletta is awarded] 50% of marital (community portion) of [Michael]'s
> Nevada PERS retirement interests.  The marital (community) portion is
> defined as those interests acquired after marriage and prior to the separation
> of the parties.  The wife's segregated 50% interest in the martial [sic]
> portion of this retirement shall be awarded to her through a qualified
> domestic relations order (QDRO).  The parties have agreed to retain
> attorney Peter Svennungsen to draft this QDRO and have it provided to the
> Nevada PERS plan administrator for processing.  The parties shall equally
> share in the cost of Mr. Svennungsen.

Clerk's Papers (CP) at 3.

Mr. Svennungsen declined to draft the QDROs, advising the parties to retain a

Nevada attorney familiar with dividing a Nevada PERS.  The parties opened a

miscellaneous proceeding in Nevada, and, in 2024, the Nevada court entered appropriate

QDRO orders.  The order expressly reserved to the Nevada court "jurisdiction to enter

3

such further orders as are necessary to enforce the award of benefits . . . in accordance with the provisions of Nevada case and statutory law." CP at 34.[1]

In July 2024, Charletta moved for an order directing Michael to begin paying her the portion of his Nevada PERS account awarded to her. At the time, Michael was still working. Charletta supported her motion by citing to *Henson*[2] for the proposition that the nonemployee spouse may file a motion in the district court requesting payment of their portion of the employee spouse's pension benefits if the employee spouse has reached retirement age but is still working.

Michael opposed Charletta's motion. He argued that granting the motion would exceed the court's jurisdiction because it would modify the divorce decree's property division. He further argued that a Washington court is "the only Court with jurisdiction to make the order." CP at 51.

Charletta replied by arguing that the Washington divorce decree had been domesticated in Nevada, after which Nevada law treats it as though it were a judgment of

---

[1] The order further stated, "[I]n the event of a conflict between this Order and the Final Divorce Order, the terms of this Order shall prevail." CP at 34 (emphasis omitted). Neither party called our attention to this language, and neither party has addressed whether this language violates the full faith and credit clause of the United States Constitution.

[2] *Henson v. Henson*, 130 Nev. 814, 334 P.3d 933 (2014).

a Nevada court. She also argued that she did not seek to modify the decree but merely to enforce it.

In September 2024, Michael filed a motion in Washington to enforce the final divorce decree. In his motion, he argued that Charletta's request in the Nevada court for *him to pay* her portion of his Nevada PERS before he retired was inconsistent with the divorce decree's QDRO provisions and the 60/40 property split. Michael asked the Washington court to order Charletta to withdraw her motion in Nevada.

In early October, before the Washington court could hear Michael's motion, the Nevada court heard argument. During the hearing, Michael's attorney attempted to address the parties' 60/40 property split, Michael's current "over $3,000 a month" equalization payment to Charletta, and how requiring Michael to additionally pay Charletta her portion of his Nevada PERS would be inconsistent with the divorce decree. CP at 107. Charletta's attorney objected to the argument because it was based, in part, on Michael's late-filed declaration.

The court granted Charletta's *Henson* motion, requiring Michael to pay Charletta her portion of his Nevada PERS even though he had yet to retire. In granting the motion, the Nevada court explained:

> [A]n order that is domesticated here in Nevada will receive full faith and credit as to enforcement of the order. That is a common principle of comity between the states. [The] Court finds there is no conflict of law. [The] Court . . . finds no jurisdictional issues or problems with this motion. A Nevada order or Nevada QDRO is governed by Nevada laws and regulations . . . . A Nevada QDRO, obviously, can be enforced in Nevada. A Nevada court, on behalf of the state of Washington court, can enforce the Washington court decree.

CP at 110. The court then addressed Michael's late-filed declaration. It declined to strike the declaration but acknowledged it had not read the declaration and it formed no basis in the court's decision.

In late October 2024, the Washington court heard Michael's motion. The court took the matter under advisement, and, in early January 2025, it issued its letter decision granting Michael's request. In its decision, the court reasoned:

> Under Full Faith and Credit principles, a Washington court has jurisdiction to settle the parties' personal interests in property located out of the state. . . . In this case, the role of the State of Nevada is to effectuate the Washington order settling [the parties'] interests in their respective Nevada pensions.

> There is nothing in the Divorce Decree that specifies when Ms. Morris is to begin receiving her portion of Mr. Morris's PERS. . . . The remedy for determining the start date of her payments . . . is to move for clarification in the State of Washington.

> In the State of Washington[,] interests in various state retirement plans can be "split." When a plan interest is "split" pursuant to the divorce decree, the Washington State Department of Retirement Systems (DRS) "splits" the retirement account into two separate accounts. . . . [T]his "split" allows

the non-employee ex-spouse to receive their share of the retirement benefits even if the employee ex-spouse is still working. *Payment of these retirements* [sic] *benefits comes from the State of Washington, not the still working ex-spouse. . . .*

In contrast, in Nevada, pursuant to [*Henson*], a nonemployee spouse can file a motion in the Nevada District Court requesting immediate payment of his/her portion of the employee spouse's pension benefits if the employee spouse is eligible to retire but has not yet retired. [If the court grants the motion,] the employee spouse must pay the nonemployee ex-spouse from the date of filing until actual retirement. The Nevada Court determines the present value of the employee spouse's pension benefits based on the date the non-employee ex-spouse make an election to receive the benefit. *Payment of these benefits is not from the Nevada retirement system but directly from the employee spouse. This Nevada option of payment is not the same or similar to the "split" option in Washington. . . .*

*. . . By requiring Mr. Morris, not the State of Nevada, to begin paying Ms. Morris her portion of his PERS benefits prior to his actual retirement,* [*Ms. Morris*] *has impermissibly modified the decree.*

*. . . Res judicata bars* [*this*].

. . . .

. . . Given the totality of the facts regarding the parties' negotiated settlement and issues litigated in Washington, the Nevada order addressed matters that could have and should have been raised in Washington. *Direct payment by Mr. Morris to Ms. Morris materially alters their agreement and the property division in their decree.*

. . . .

*Ms. Morris is enjoined from enforcing the Nevada Order* (entered 11/4/2024) . . . .

CP at 207-09 (emphasis added) (citation omitted).

After the court entered a formal order, Charletta timely appealed.

ANALYSIS

A.   FULL FAITH AND CREDIT

Charletta argues that the Washington court's order failed to give the Nevada

court's *Henson* order full faith and credit.  Michael responds that the Nevada court failed

to give the Washington court's divorce decree full faith and credit.  We begin our

analysis by discussing this constitutional requirement.

Article IV, section 1 of the United States Constitution states, "Full faith and credit

shall be given in each state to the public acts, records, and judicial proceedings of every

other state."  Thus, states must recognize the judgments of sister states.  *OneWest Bank,*

*FSB v. Erickson*, 185 Wn.2d 43, 55-56, 367 P.3d 1063 (2016).  "[A party] can collaterally

attack a foreign order 'only if the court lacked jurisdiction or constitutional violations

were involved.'"  *Id.* at 56 (quoting *State v. Berry*, 141 Wn.2d 121, 128, 5 P.3d 658

(2000)).  "Otherwise, a Washington court 'must give full faith and credit to the foreign

judgment and regard the issues thereby adjudged to be precluded in a Washington

proceeding.'"  *Id.* (internal quotation marks omitted) (quoting *In re Est. of Tolson*,

89 Wn. App. 21, 30, 947 P.2d 1242 (1997)).  If the foreign court had jurisdiction, "the

8

full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." *Milliken v. Meyer*, 311 U.S. 457, 462, 61 S. Ct. 339, 85 L. Ed. 278 (1940).

Michael contends that the Nevada court's *Henson* order is not entitled to full faith and credit because it is derivative of the Washington divorce order and "[t]he only judgment that exists in Nevada is the Washington decree." Resp't's Br. at 11 (emphasis omitted). We disagree that the Nevada court's *Henson* order is not a judgment. Nevada law defines a judgment to include any order from which an appeal lies. *Lytle v. Rosemere Ests. Prop. Owners*, 129 Nev. 923, 926, 314 P.3d 946 (2013). Michael does not contest that he could have appealed the Nevada court's *Henson* order.

On appeal, both parties agree that both the Washington and the Nevada courts have jurisdiction over their Nevada PERS accounts. We note there is nothing in the divorce decree that said *when* Charletta could receive her portion of Michael's Nevada PERS benefits. For this reason, the Nevada court was not precluded by full faith and credit principles from adhering to Nevada law and granting Charletta's request to begin receiving her portion of Michael's Nevada PERS before he retired.

Conversely, the Washington court's order enjoining Charletta from enforcing the Nevada court's *Henson* order is directly contrary to that order. Full faith and credit principles precluded the Washington court from enjoining such enforcement.

We conclude that the trial court erred by enjoining Charletta from enforcing the Nevada *Henson* order. Moreover, to the extent that common law principles such as res judicata or collateral estoppel might imply a different result, the Nevada court's *Henson* order cannot be collaterally attacked on those bases. *OneWest Bank*, 185 Wn.2d at 56.

B.  MODIFICATION OF PROPERTY AWARD NOT PRECLUDED

The parties dispute whether the Nevada court's *Henson* order granted Charletta relief beyond that afforded by the divorce decree. The Washington court determined: "By requiring [Michael], not the State of Nevada, to begin paying [Charletta] her portion of his PERS benefits prior to his actual retirement, [Charletta] has impermissibly modified the decree." CP at 208. The court later added, "Direct payment by [Michael] to [Charletta] materially alters their agreement and the property division in their decree." CP at 208. We agree.

In Washington, interests in state retirement plans are "split" by the Washington State Department of Retirement Systems, and the "split" allows the nonemployee spouse to receive their share of the employee spouse's retirement benefits even if that ex-spouse

10

is still working.  Monthly payment of this benefit comes from Washington, not from the still working spouse.  Whereas in Nevada, *Henson* requires the employee spouse, personally, to pay the nonemployee spouse their share of benefits until the employee spouse retires.  *See Henson*, 130 Nev. at 822.  Although *Henson* requires the amount the nonemployee spouse receives to be reduced to present value, and for this reason would not alter the parties' 50/50 pension split, it still imposes a cash flow problem on the employee spouse until retirement.

We affirm the trial court's determination that the Nevada *Henson* order materially altered the parties' property division.  We do not decide whether this material alteration could serve as a basis for the Washington court to modify the parties' property division under RCW 26.09.170(1).  But we do not preclude the trial court from conducting a hearing and awarding appropriate relief, including modification of the property award, if supported by adequate findings of fact and conclusions of law.[3]

_____

[3] Collateral estoppel would not preclude the Washington court from modifying the property award.  The Nevada court's decision to grant Charletta's *Henson* motion rested on it having jurisdiction to enforce the Nevada QDRO, which, by its terms, controlled if there was a conflict between it and the divorce decree.  For this reason, the trial court did not, nor was it required to, determine whether Charletta's request would modify the divorce decree.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Staab, C.J.                                Hill, J.